THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:12-CV-2236** |
| | : | **(JUDGE MARIANI)** |
| **OLD FORGE BOROUGH**, et al. | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court are Defendants Old Forge Borough, Old Forge Police

Department, and Old Forge Fire Department's motions to dismiss (Docs. 30, 132).

Defendants Lawrence Semenza and James Krenitsky filed motions to partially dismiss

Plaintiff's amended complaint (Docs. 126, 128) which the Court will address in a separate

opinion. The parties have fully briefed the motions, and they are ripe for decision. For the

reasons set forth below, Defendants' motions to dismiss will be granted in part and denied

in part.

### II. PROCEDURAL HISTORY

Plaintiff, Jane Doe, filed her complaint (Doc. 1) on November 9, 2012 against

Defendants Old Forge Borough, Old Forge Police Department, Old Forge Fire Department,

Lawrence Semenza, Walter Chiavacci, and James Krenitsky. Each Defendant, with the

exception of Chiavacci, subsequently filed a motion to dismiss (Docs. 17, 22, 30, 64). On

November 12, 2014, the Court granted Plaintiff's motion for leave to file an amended

complaint and add an additional defendant and allowed each party file a new motion to

dismiss, a supplement to its brief in support of the motion to dismiss previously filed, or to

notify the Court if it wanted the Court to deem the previous motion to dismiss as resubmitted

as to Plaintiff's amended complaint. (Doc. 109). As a result, Old Forge Borough and Old

Forge Police Department filed a supplement (Doc. 134) to their prior motion and brief (Docs.

30, 34); Semenza and Krenitsky filed new motions to dismiss (Docs. 126, 128); Old Forge

Fire Department filed a motion to dismiss (Doc. 132); and newly added defendant, Old

Forge Hose & Engine Company, filed an Answer to the plaintiff's amended complaint (Doc.

122).

Plaintiff's amended complaint (Doc. 125) against Defendants Old Forge Borough,

Old Forge Police Department, Old Forge Fire Department, Old Forge Hose & Engine

Company, Lawrence Semenza, Walter Chiavacci, and James Krenitsky, set forth 22 counts

including violations of Plaintiff's rights under 42 U.S.C. § 1983 against the Old Forge

Borough, Old Forge Police Department, Old Forge Fire Department, Semenza, and

Krenitsky (Counts I-V); violation of the Child Abuse Victims' Rights Act, 18 U.S.C. § 2255(a),

by Semenza, Krenitsky, and Chiavacci (Count VI); childhood sexual abuse and vicarious

liability (Count VII), negligence (Count VIII), negligent supervision (Count IX), and premises

liability (Count X) by Old Forge Hose & Engine Company; negligence by Semenza and

Krenitsky (Counts XI-XII); negligence per se by Semenza, Krenitsky, and Chiavacci (Counts

2

XIII-XV); assault and battery by Semenza, Krenitsky, and Chiavacci (Counts XVI-XVIII);

negligent infliction of emotional distress by Semenza, Krenitsky, and Chiavacci (Counts XIX-

XXI); and punitive damages against the Old Forge Hose & Engine Company, Semenza,

Krenitsky, and Chiavacci (Count XXII).

### III. FACTUAL ALLEGATIONS

Plaintiff's amended complaint (Doc. 125) makes the following allegations:

Plaintiff Jane Doe was born in 1989. (Doc. 125, ¶ 1). The events at issue in

Plaintiff's amended complaint began in July, 2004, when Plaintiff was 15 years old, and

largely took place at the Old Forge Police Department and Old Forge Hose & Engine

Company ("OFHE") both of which operate out of the same building. (Id. at ¶¶ 10-12, 17).

On or about July 10, 2004 while at a friend's house, Chiavacci,[1] who Plaintiff knew

from her visits to the OFHE, approached Plaintiff to take a walk. (Doc. 125, ¶¶ 18, 19).

During their walk, Chiavacci led Doe down a dark alley and began grabbing and kissing her,

forcing himself on her and inserting his fingers into her vagina. (Id. at ¶¶ 20, 21). Plaintiff

was eventually able to free herself from Chiavacci and run to safety. (Id. at ¶ 22). Over the

next three years, Chiavacci begged Plaintiff not to say anything about the events of that

night. (Id. at ¶ 23).

---

[1] Chiavacci, born in 1965, was a firefighter for the OFHE and resided full time at OFHE. (Doc. 125, ¶¶ 8, 24).

3

Following this incident, in approximately August, 2004, Doe was approached and
encouraged by Semenza[2] to join the OFHE as a fire department member in the Junior
Firefighter Program[3], applied to the program for which Chiavacci and Krenitsky[4] served as
references on her application, and became a volunteer junior firefighter, effective
September 1, 2004. (Doc. 125, ¶¶ 28, 30, 31). Plaintiff was given a key to the OFHE and
was told that she could come there anytime. (*Id*. at ¶ 32).

As a junior firefighter, Plaintiff was required to report to Semenza and would, at
Semenza's request and direction, frequently spend time alone with him in his offices at the
OFHE and the Old Forge Police Department. (*Id*. at ¶ 34). Semenza encouraged Plaintiff
to spend time at the OFHE, particularly when he worked the late shift as a police officer
and/or a firefighter. (*Id*. at ¶ 55). Semenza also individually tutored Doe on different
firefighting essentials before the skills were taught in a classroom setting. (*Id*. at ¶ 43).
Plaintiff eventually grew to trust Semenza, spending all of her free time at the OFHE. (*Id*. at
¶ 56). Plaintiff alleges that Semenza "exerted his position of authority as a police officer and
fire captain and used his uniform, which included a gun and an Old Forge Police and/or Old
Forge Hose and Engine badge, to groom the fifteen (15) year old Plaintiff, get near the

---

[2] Semenza, born in 1964, was a Police Officer and/or the Chief of Police with the Old Forge Police
Department as well as Captain of the OFHE. (Doc. 125, ¶¶ 2-3).

[3] The Junior Firefighter Program was established by OFHE, bylaws, Article V, Section 4. (Doc.
125, ¶ 29).

[4] Krenitsky, born in 1978, was a patrolman with and/or a Captain of the Old Forge Police
Department and also a member of the OFHE. (Doc. 125, ¶¶ 5-6).

4

Plaintiff, gain the Plaintiff's trust and control the Plaintiff's successes with Old Forge Hose and Engine." (*Id.* at ¶ 35).

While the OFHE had the necessary gear for Plaintiff and new firefighters received used equipment, Semenza, who was responsible for distributing all gear to the members of the OFHE, utilized the resources of the Old Forge Borough and OFHE to purchase new equipment and supplies for Doe in the fall of 2004. (Doc. 125, ¶¶ 38, 39). These purchases included a new leather helmet for which Semenza drove Plaintiff to a store to be specifically fitted, a dress uniform, t-shirts, sweatshirts, four job shirts, and tools, as well as a shower bag and shower items. (*Id.* at ¶¶ 40, 41).

Semenza also took Plaintiff to multiple locations, often in a police vehicle, including to training sessions, the mall, Walmart, Sam's Club and to the movies and would often buy her coffee, non-alcoholic drinks, and dinner. (*Id.* at ¶ 42).

In September, 2004, Semenza challenged Chiavacci and another firefighter from the OFHE to compete in a set of skills encompassing the OFHE's duties. Semenza and Doe, who were partners in this challenge, won the challenge and Semenza bought Doe a fourteen karat yellow gold Maltese cross and chain as a reward. (*Id.* at ¶¶ 44-46). Plaintiff wore the necklace every day but Semenza told her not to disclose that he had bought it for her. (*Id.* at ¶ 47).

Around October, 2004, Semenza and Doe drove alone to an OFHE training that they were attending together. During the car ride, Semenza praised Plaintiff and sang "Drift Away" by Dobie Gray to her which he referred to as "our" song. (*Id*. at ¶¶ 48, 49).

Between November 2004 and January 2005, Semenza was the lead instructor at an "Essentials of Firefighting" training, taking Plaintiff with him and using her as his aide. (Doc. 125, ¶¶ 51, 52). In December of 2004, Plaintiff also attended classes out of the area with Semenza and Chiavacci where Semenza referred to Doe as his "sexy girlfriend," and treated her differently than other trainees. (*Id*. at ¶¶ 53, 54).

In December 2004, while Plaintiff was sitting on a countertop at the OFHE, Semenza approached her, spread her legs, and, standing between them, privately asked her what she wanted for Christmas. Doe responded that she had always wanted a claddagh ring and was later instructed by Semenza to go to a specific jewelry store in Old Forge to get fitted for the ring. Semenza gave her the fourteen karat white gold claddagh ring at Christmas of that year. (*Id*. at ¶¶ 60-63).

Beginning in January, 2005, Krenitsky began engaging in sexually suggestive conversations with Doe in the Old Forge Police Department and the OFHE, telling her in explicit terms the sexual acts he wanted to perform on her. Plaintiff then began an intimate relationship with him because she felt "intimidated and incapable of declining, as Krenitsky was dressed in police uniform, which included but was not limited to wearing his Old Forge Police badge and gun." (Doc. 125, ¶¶ 81, 82). Krenitsky would schedule times to meet Doe

in the bunkroom of the OFHE where they would engage in sexual relations. (*Id.* at ¶ 83). After approximately 6 months, Krenitsky "abruptly and without reason ended the relationship." (*Id.* at ¶ 85).

In March of 2005, Plaintiff attended a Muncy Area Mutual Association training with Chiavacci and Semenza which was paid for by the Old Forge Borough and/or the OFHE. Plaintiff shared a room with Chiavacci but spent most of her time with Semenza who had a separate hotel room. (*Id.* at ¶¶ 64-66). Upon their return from this training, Semenza told members of the Old Forge Police Department and the OFHE that he had engaged in sexual acts with Doe, causing her "embarrass[ment], harass[ment] and humiliat[ion] through both comments and actions by members of the Police Department and Old Forge Hose and Engine." (*Id.* at ¶¶ 67, 68).

In 2006, Semenza alleged at a meeting with members of the OFHE and the Old Forge Fire Department that he had naked photos of Doe. As a result, she was suspended from OFHE for 30 days. (Doc. 125, ¶¶ 74, 75).

Semenza continued to sexually abuse and assault Plaintiff until 2007, when his sexual advances toward her declined and eventually ended. (*Id.* at ¶¶ 76, 77).

According to Plaintiff, between 2004 and 2007, she and Semenza would often exchange instant messages to arrange times to meet when Semenza would be alone at either the Police Department or the OFHE. During this time frame, they would meet in the firehouse gym, bunkhouse, or kitchen, and Semenza would expose his genitals to her and

engage in inappropriate sexual contact with her. On at least one occasion Semenza

inserted his fingers into Doe's vagina at the OFHE. (*Id*. at ¶¶ 57-59). Semenza also

instructed Plaintiff to shower at the firehouse before returning to high school or home. (*Id*. at

¶ 41). As a result, Plaintiff frequently showered at the OFHE and Semenza would use a

butter knife to enter the locked bathroom and watch Plaintiff shower, which later progressed

into acts of touching and groping. (*Id*. at ¶¶ 69-71). Semenza reportedly frequently referred

to Doe as "his girlfriend," "sexy" and "beautiful" in front of other firemen, police officers, and

Borough personnel and would repeatedly and openly request that Doe have sex with him.

(*Id*. at ¶¶ 72, 73).

Semenza's actions resulted in criminal charges on May 9, 2012 of unlawful contact

with a minor, indecent exposure, corruption of minors, indecent assault on a person less

than 16 years of age, persons required to report suspected child abuse, and aggravated

indecent assault on a person less than 16 years of age, and he was convicted of Corruption

of a Minor and Person to Report Suspected Child Abuse on October 22, 2013. (Doc. 125,

¶¶ 78, 79). Krenitsky was charged on May 3, 2012 with involuntary deviate sexual

intercourse with a person less than 16 years of age, corruption of minors, and indecent

assault on a person less than 16 years of age, and pleaded guilty to Indecent Assault

without Consent of Other on September 12, 2013. (*Id*. at ¶¶ 86, 87). As a result of the

events of July 10, 2004, Chiavacci was charged on May 3, 2012 with aggravated indecent

assault, corruption of minors, and indecent assault of a person less than 16 years of age.

8

He pleaded guilty to Indecent Assault on a person less than 16 years of age on December 19, 2012 and was sentenced on January 27, 2014. (Doc. 125, ¶¶ 25-27).

At the time of the filing of the amended complaint, Semenza, Krenitsky, and Chiavacci were all serving prison sentences arising out of their actions against Plaintiff. (Id. at ¶¶ 27, 80, 88).

## IV. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Prop. Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Twombly, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

9

cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v.*

*Abbott Labs.*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks

omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

## V. ANALYSIS

Plaintiff's amended complaint alleges that the Old Forge Borough, Old Forge Police

Department, and Old Forge Fire Department violated Plaintiff's civil rights pursuant to 42

U.S.C. § 1983, specifically by failing to promulgate policies, failing to supervise, and failing

to train (Count IV) and by violating Doe's Substantive Due Process rights through the

actions of person with final authority (Count V). (Doc. 125, ¶¶ 110-132).

## A. The Old Forge Police Department and Old Forge Fire Department

Defendants contend that the Old Forge Police Department "is a subunit of Old Forge Borough" and the claims against the police department are therefore redundant and must be dismissed. (Doc. 30, ¶¶ 29-31). Defendants further argue that the Old Forge Fire Department is a "non-existent" entity, but, should the Court find for the sake of argument that the fire department exists, it is a branch and subunit of Old Forge Borough and should be dismissed as a party for the same reason as the police department. (Docs. 133, 134).

It is well settled that subunits of local governments are not "persons" amenable to suit under § 1983. *See Martin v. Red Lion Police Dep't,* 146 Fed.Appx. 558, 562 n.3 (3d Cir. 2005) (finding that the police department, as the sub-division of the borough through which the borough fulfilled its policing functions, was not a proper defendant pursuant to § 1983); *Briggs v. Moore,* 251 Fed.Appx. 77, 79 (3d Cir. 2007) (affirming the district court's dismissal of the police department because the department would not be considered separate from the municipality such that it could be sued for the purposes of § 1983); *Johnson v. City of Erie,* 834 F.Supp. 873, 879 (W.D.Pa. 1993) (citing *PBA Local No. 38 v. Woodbridge Police Dept.,* 832 F.Supp. 808, 826 (D.N.J.1993) (collecting cases)) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not.").

11

In response to Defendants' motion to dismiss the police department, Plaintiff merely argues that discovery had not begun and that the police department has not provided any evidence that it is a subunit of the Borough. (Doc. 45, at 13). However, Plaintiff's own amended complaint alleges that the Old Forge Police Department "is a local governmental entity within the Commonwealth of Pennsylvania and established and operated by the Borough of Old Forge . . . ." and that the "Old Forge Borough is empowered to establish and regulate its Police Department and has a duty to protect against harmful acts of government officials through promulgating proper policies, procedures, training and supervision." (Doc. 125, ¶¶ 10, 111). Plaintiff's amended complaint also includes as an attachment the Old Forge Police Department, Article IV, Ordinance 6, which states that "[t]here is hereby created and established a Police Department for the Borough of Old Forge . . . ." (Doc. 125, Ex. B, § 29-26). A municipal police department such as the Old Forge Police Department is necessarily a sub-unit of the local government entity controlling it, and Plaintiff clearly alleges that the police department operates pursuant to the direction of the Old Forge Borough. Given Plaintiff's admission and the well-settled law on this subject, the Old Forge Police Department must be dismissed as a matter of law.

Despite Defendants' contention that the Old Forge Fire Department is a "non-existent entity", the Court need not reach that issue. Clearly, if the department was a non-existent entity, this party would need to be dismissed. However, Plaintiff's amended complaint alleges the fire department is an entity and Court must accept this fact as true at

this stage in the proceedings. Nonetheless, Plaintiff's amended complaint alleges facts demonstrating that the fire department would be subject to the same exclusion as the police department. Similar to the case of the police department, Plaintiff states that "Old Forge Fire Department is a local governmental entity within the Commonwealth of Pennsylvania, which consists of a Fire Chief, appointed by the Old Forge Borough Council and is operated by the Borough of Old Forge. . . . " (Doc. 125, ¶ 11). Plaintiff even admits that the amended complaint alleges that the fire department is a sub-unit of the Borough. In the Old Forge Fire Department's Motion to Dismiss, Defendant states that "[t]he Old Forge Borough Fire Department is alleged to be a subunit of and operated by the Borough of Old Forge" (Doc. 132, ¶ 3), to which Plaintiff responds "[n]ot contested" (Doc. 140, ¶ 3). *See Regalbuto v. City of Philadelphia*, 937 F.Supp. 374, 377 (E.D.Pa. 1995) *aff'd,* 91 F.3d 125 (3d Cir.1996) (dismissing the police and fire departments "because they are not separate legal entities that can be sued") (citing *Philadelphia v. Glim,* 613 A.2d 613, 616 (Pa. Commw. Ct. 1992) (holding that fire department may not be sued as though it were a legal entity separate from the city; all suits against any city department must be brought against the city itself, because departments do not have independent legal existence)). The amended complaint fails to allege any other facts to support an argument that, in the alternative, the fire department may be something other than a subunit of the Borough. Thus, not only does Plaintiff's amended complaint allege that the fire department operates pursuant to the direction of the Old Forge Borough, Plaintiff has admitted to this. Given the language of the amended

13

complaint, Plaintiff's admission, and the well-settled law on this subject, the Old Forge Fire

Department must also be dismissed due its status alleged by Plaintiff as a subunit of the

Borough.

## B. The Borough of Old Forge

Both Count IV and Count V against the Borough arise out of 42 U.S.C. § 1983. To

succeed on a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate the violation of a

right protected by the Constitution or laws of the United States, committed by a person

acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)(en banc).

Section 1983 is not in itself a source of substantive rights, instead providing a remedy for

violations of rights protected by other federal statutes or by the U.S. Constitution. *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L. Ed.2d 791 (1985).

Therefore, in evaluating a § 1983 claim, a Court must first "identify the exact contours of the

underlying right said to have been violated" and determine "whether the plaintiff has alleged

a deprivation of a constitutional right at all." *Nicini*, 212 F.3d at 806 (citing *Cnty of*

*Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). As

applied in a case such as the one currently before this Court, Plaintiff's claims against the

Old Forge Borough under § 1983 purportedly arise under the Fourteenth Amendment.

### 1. Count IV – 42 U.S.C. § 1983 – Failure to Promulgate Policies; Failure to Supervise; Failure to Train

A municipality may be held liable under § 1983 when the alleged unconstitutional

action "implements or executes a policy statement, ordinance, regulation, or decision

14

officially adopted and promulgated by that body's officers", including "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. A municipality may also be liable on other bases, such as if it failed to train or supervise municipal employees to avoid constitutional violations. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Nonetheless, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury," but rather relies on the alternative basis that some failure to train on the part of the municipality caused an employee to inflict the injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty Com'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Any such failure to train "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'" in order to "'be properly thought of as a city "policy or custom" that is actionable under § 1983.'"

15

*Connick v. Thompson*, --- U.S. ---, 131 S.Ct. 1350, 1359-60, 179 L.Ed.2d 417 (2011)

(quoting *City of Canton*, 489 U.S. at 388-89).   However, "[w]ithout notice that a course of

training is deficient in a particular respect, decisionmakers can hardly be said to have

deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

at 1360.  Therefore, an allegation that a municipality failed to adequately train, supervise,

discipline, or control its employees will only form the basis for § 1983 municipal liability "if

the plaintiff can show both contemporaneous knowledge of the offending incident or

knowledge of a prior pattern of similar incidents and circumstances under which the

supervisor's actions or inaction could be found to have communicated a message of

approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d

Cir. 1998); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

As the Third Circuit has observed:

> There are three situations where acts of a government employee may be
> deemed to be the result of a policy or custom of the governmental entity for
> whom the employee works, thereby rendering the entity liable under § 1983.
> The first is where the appropriate officer or entity promulgates a generally
> applicable statement of policy and the subsequent act complained of is simply
> an implementation of that policy. The second occurs where no rule has been
> announced as policy but federal law has been violated by an act of the
> policymaker itself. Finally, a policy or custom may also exist where the
> policymaker has failed to act affirmatively at all, though the need to take some
> action to control the agents of the government is so obvious, and the
> inadequacy of existing practice so likely to result in the violation of
> constitutional rights, that the policymaker can reasonably be said to have
> been deliberately indifferent to the need.

*Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal citations and quotation marks omitted).

Here, Plaintiff alleges in Count IV that the Old Forge Borough "has the duty to promulgate proper policies, procedures, training and supervision" and failed to do so by not having certain policies and procedures in place, including rules regarding minors, contact with these minors, inappropriate conduct in the workplace, use of department resources "while on duty, to arrange for sexual encounters with minors", lack of policies for reporting improper and illegal conduct of police and/or fire department members; by not properly training the members of the police department regarding permissible contact with minors, not to use their authority to solicit sexual relations from minors, not to insult and injure the reputation of members of the OFHE and Junior Firefighter Program, and in not properly training, disciplining, controlling or sanctioning firefighters for having naked photos of Plaintiff; and for failure to supervise, specifically as to the acts of Semenza and Krenitsky. (Doc. 125, ¶¶ 110-117).

Despite Plaintiff's contentions to the contrary (Doc. 45, at 9-11), she has not pleaded any non-conclusory facts which properly allege that Semenza was a final decisionmaker, and as a matter of law, he is not.  In ascertaining whether an official has final policy-making authority, and can therefore bind the municipality by his conduct, "a court must determine (1) whether, as a matter of state law, the official is responsible for making policy *in the particular area* of municipal business in question, and (2) whether the official's authority to

make policy in that area is *final and unreviewable*." *Hill v. Borough of Kutztown*, 455 F.3d

225, 245-246 (3d Cir. 2006) (italics in original) (internal citations and quotations omitted).

*See also Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003) ("[I]f a municipal employee's

decision is subject to review, even discretionary review, it is not final and that employee is

therefore not a policymaker for purposes of imposing municipal liability under § 1983").

Thus, final policymaking authority is not automatically delegated to an employee when a

municipality simply delegates the discretion to carry out the duties necessary and proper to

perform the job. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-483, 106 S.Ct. 1292,

89 L.Ed.2d 452 (1986) ("The fact that a particular official—even a policymaking official—has

discretion in the exercise of particular functions does not, without more, give rise to

municipal liability based on an exercise of that discretion.  The official must also be

responsible for establishing final government policy respecting such activity before the

municipality can be held liable") (internal citation omitted); *City of St. Louis v. Praprotnik*,

485 U.S. 112, 129-130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

Plaintiff's amended complaint makes the following allegations regarding Semenza's

authority, albeit all within Count V and not Count IV:

> The Mayor may . . .  delegate to the Chief of Police supervision over and
> instruction to subordinate officers in the manner of performing their duties.
>
> . . .
>
> At all relevant times, the Mayor of Old Forge, together with Borough Council,
> delegated the operations of the Police Department to Semenza as Officer
> and/or Chief of the Old Forge Police Department.

18

Old Forge Borough granted Semenza the final authority to establish municipal policies for the Police Department.

Semenza's final authority is evidenced by the General Order Policies and Procedures Manual of the Old Forge Police Department in which each and every policy and procedure is signed by the order of Lawrence A. Semenza, Chief of Police.

Pursuant to Ordinance No. 8 of the Borough of Old Forge, which was approved and adopted on June 16, 1992, the Fire Chief of Old Forge shall be appointed by Borough Council.

At all relevant times, the Mayor of Old Forge, together with Borough Council, delegated the operations of the Fire Department to the Old Forge Fire Department Chief, who in turn delegated the operations of the Fire Department to Lawrence Semenza as Captain of Old Forge Hose and Engine.

Semenza possessed the final authority to establish policies for the Old Forge Fire Department, namely Old Forge Hose and Engine.

. . .

The decisions and actions of Semenza acting in his official capacity, and acting directly as a final government decision maker, reflected and represented the policies and procedures of Defendant Old Forge Borough, the Old Forge Police Department and the Old Forge Fire Department.

(Doc. 125, ¶¶ 122, 124-129, 131).

Plaintiff supports a number of these allegations by attaching several exhibits to her

amended complaint, none of which support her key factual pleadings. The Borough of Old

Forge Code, Chapter 29, Article IV, Ordinance 6, signed by the Mayor and Council

President, provides that the Mayor "shall direct the manner in which the Chief and members

of the Police Department shall perform their duties" and allows the Mayor to "delegate to the

19

Chief of Police supervision over and instruction to subordinate officers in the manner of

performing their duties." (Doc. 125, Ex. B, § 29-28). This Code "represents codification of

all ordinances and resolutions of the Borough of Old Forge relating to the establishment of a

Police Department as provided by the Borough Code, Act of February 1, 1966, P.L. 1656,

No. 581, *as amended* 53 P.S. § 46121[5]." (*Id.* at § 29-42). The cited Pennsylvania statue

provides that "the mayor shall have full charge and control of the chief of police and the

police force" but "may delegate to the chief of police . . . supervision over and instruction to

subordinate officers in the manner of performing their duties." 8 Pa.C.S.A. § 1123.1. *C.f.

Santiago v. Warminster Tp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) ("[W]hether [the police

chief] is a final policymaker is ultimately a legal rather than a factual question, [*Praprotnik*,

485 U.S. at 124, but] that does not relieve [Plaintiff] of the obligation to plead in some

fashion that [the police chief] had final policy making authority, as that is a key element of a

*Monell* claim. . . . Moreover, the Supreme Court has forbidden courts from 'assuming that

municipal policymaking authority lies somewhere other than where the applicable law

purports to put it.' *Praprotnik,* 485 U.S. at 125 n.1 . . ."); *see also Kocher v. Larksville

Borough*, 926 F.Supp.2d 579, 607 (M.D.Pa. 2013) ("*Santiago* instructs against the

presumption that all municipal police chiefs in the Commonwealth are final policymakers.

And, the relevant portions of the Pennsylvania Borough Code indicate that a borough Police

Chief is not a final policymaker. *See* 53 Pa. Stat. Ann. § 46123.1.").

---

[5] 53 P.S. § 46121 has been re-codified at 8 Pa.C.S.A. § 1121, *et seq.*

20

Furthermore, the Official Police Department Policy and Procedure Manual, dated

July 6, 2004, which was approved by the Mayor, further confirms the power of the Mayor

over the Police Department, despite any duties that may have been delegated to the Police

Chief. Pursuant to the section entitled Old Forge Police Department, Command and

Control:

> The Mayor by law shall have authority over when and where the police department and police officers perform their duties. The Mayor shall be responsible for all administrative duties of the department. He may designate any officer of the department to assist him in such duties. He shall also be responsible for discipline taken against any officer within the department.

> The Chief of Police shall be the commanding officer of the Old Forge Police department[. H]e will be responsible for assisting the Mayor with establishing policy within the department and also shall enforce all adopted policies and procedures. . . .

> . . . .

> Any and all internal police department matters will follow the chain of command. The Mayor will be the final step in the process. . . .

(Old Forge Police Department, Command and Control (II)(A)(B)(H), Doc. 125, Ex. C). Thus,

despite the well-pleaded allegation that the Mayor delegated certain duties to Semenza,

Plaintiff's bare allegation that this delegation of duties made Semenza, as Officer and/or

Chief, a final decisionmaker for the Old Forge Police Department amounts to nothing more

than a formulaic recitation of the elements of Plaintiff's claim.

With respect to Semenza's role as a final policy or decision maker to "establish

policies for the Old Forge Fire Department, namely Old Forge Hose and Engine", Plaintiff's

position is even more tenuous. The OFHE is one of three volunteer fire companies serving

the Borough of Old Forge. (See Old Forge Hose & Engine Company, Station 932, By-laws, Doc.125, Ex. A). The Borough of Old Forge, Ordinance No. 8, dictates that the "Fire Chief of Old Forge shall be appointed by the Borough Council. . . ." (Doc. 125, Ex. E, §1(D)). Plaintiff alleges that the Mayor and Borough Council delegated to an unnamed Fire Chief the "operations of the Fire Department to the Old Forge Fire Department Chief, who in turn delegated the operations of the Fire Department to Lawrence Semenza as Captain of Old Forge Hose and Engine." The amended complaint offers no supporting factual allegations to sustain this claim. Unlike with Plaintiff's allegations with respect to the delegation of policymaking authority to Semenza as Officer and/or Chief of the Police, there is no allegation that such a delegation from the Fire Chief to Semenza was permissible, nor what specific powers were delegated to the Fire Chief or, subsequently, to Semenza. See e.g., Mark v. Borough of Hatboro, 51 F.3d 1137, 1147 n.11 (3d Cir. 1995) (In determining whether a private volunteer fire company is a state actor, "[w]hen the question is whether the state can delegate a responsibility and thereby avoid the strictures of the Fourteenth Amendment, it is illogical to view the delegation of that very responsibility as evidence that the responsibility can be delegated."). Furthermore, Plaintiff's vague assertion that "the operations" were delegated to Semenza cannot reasonably be interpreted to mean the delegation of any final decisionmaking authority. The delegation of "operations" is not tantamount to a delegation of policymaking authority, let alone a delegation of any final and unreviewable decisionmaking authority. Plaintiff cannot simply parlay her allegation that

22

"operations" were delegated to Semenza as Captain of OFHE into a conclusory statement that "Semenza possessed the final authority to establish policies for the Old Forge Fire Department, namely Old Forge Hose and Engine."

Taking as true each of Plaintiff's well-pleaded factual assertions, Plaintiff's failure to put forth sufficient non-conclusory allegations to properly support her claim, together with the Borough of Old Forge Code and Police Department Policy and Procedure Manual, both attached to Plaintiff's amended complaint, and in conjunction with Pennsylvania statutory authority and Third Circuit case law, demonstrate that Plaintiff has not and cannot as a matter of law allege here that Semenza's authority with respect to policy was final or unreviewable. He therefore was not a final decisionmaker for either the police department or OFHE for the purposes of this action. Instead, the Mayor clearly possessed the final authority to review the Police Chief's decisions, and at best, Semenza was responsible for *assisting* the Mayor with establishing police department policy.[6] Even that much cannot be said for Semenza's responsibilities in the OFHE, wherein Plaintiff only pleads in conclusory terms that a delegation of "operations" from the Mayor and Council to an unnamed Fire Chief and then to Semenza in some way made Semenza a final decisionmaker. Thus, as a

---

[6] Plaintiff's amended complaint, citing the Official Police Department Policy and Procedure Manual (Doc. 125, Ex. C), states that "Semenza's final authority is evidenced by the General Order Policies and Procedures Manual of the Old Forge Police Department in which each and every policy and procedure is signed by the order of Lawrence A. Semenza, Chief of Police." (Doc. 125, ¶ 126). A review of this exhibit reveals that none of the policies are signed by Semenza, nor is there any reference to him. Rather, the first page of the Policy and Procedure Manual indicates that it was "approved and implemented" on July 6, 2004, below which is the name of Anthony Torquato, Mayor of Old Forge.

matter of law, Plaintiff has failed to allege that Semenza was a final policymaker for purposes of binding the municipality for his conduct.

Because the imposition of liability on the Borough cannot be premised on a theory that Semenza was a final policymaker, Plaintiff must have alleged facts sufficient to allow the case to proceed on a different basis. Specifically, Plaintiff's amended complaint must have identified one or more final policymakers who had notice of the events at issue, failed to properly supervise the members of the police department and/or OFHE or correct deficiencies in the training program, and failed to take affirmative actions "though the need to take some action to control the agents of the government [was] so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need," *Natale*, 318 F.3d at 584. These individuals necessarily consist of the Mayor and members of the Borough Council, all of whom are only summarily referred to in the amended complaint. Instead, Plaintiff merely alleges that "after reasonable opportunity to further investigate or access discovery, the Mayor of Old Forge, the Borough of Old Forge,[7] Old Forge Council, Old Forge Hose and Engine and Semenza knew or should have known of the repeated sexual encounters, comments and harassment between members of the Old Forge Police Department and/or Old Forge Hose and Engine and Plaintiff" and that "after reasonable opportunity to further investigate or access discovery," these same individuals

---

[7] Plaintiff seemingly distinguishes between the Mayor and Council members and the Borough of Old Forge. It is unclear who Plaintiff believes constitutes "the Borough of Old Forge" since an entity itself obviously cannot have knowledge of events.

24

and entities "disregarded a known or obvious consequence of failing to promulgate policies, to supervise and to provide proper training to Borough and fire employees that had access to minors within the Police Department and Old Forge Hose and Engine." (Doc. 125, ¶¶ 89, 90).

Under *Iqbal* and *Twombly*, the aforementioned allegations are largely conclusory and nearly fail to satisfy Plaintiff's pleading burden, reading instead as an attempt by Plaintiff to engage in discovery in order to create a cause of action against the Borough. *See Iqbal*, 556 U.S. at 678-679 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [Federal Rule of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (internal citations and quotation marks omitted). To the extent that Plaintiff's claims against the Borough are based on a theory that reckless or negligent behavior on the part of Semenza, Krenitsky, and/or Chiavacci, could have been prevented if there had been a policy in place with respect to the treatment of minors, or a more rigorous program to train police officers in proper contact with minors, Plaintiff's argument borders on the unreal. The sexual abuse of minors is beyond question a serious criminal offense and there can be no serious argument that any person, let alone a member of law enforcement, is unaware of the criminality of this

25

behavior. It seems preposterous to suggest that a policymaker should have recognized the need to institute a policy or training program to prevent an officer from sexually abusing or harassing a minor, including training the members of the police and fire department regarding permissible contact with minors and not to use their authority to solicit sexual relations from minors, as well as not using of department resources "while on duty, to arrange for sexual encounters with minors." As set forth in *Iqbal*, the reviewing court must draw on its judicial experience and common sense in determining the plausibility of a complaint, and the allegations put forth by Plaintiff that policies or training on this subject could have prevented the events at issue cannot even minimally meet the "plausibility" determination. The need for a policy or training prohibiting sexual assault and harassment of a minor cannot be said to be "so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need", *Natale*, 318 F.3d at 584.

Nonetheless, at this stage in the proceedings and in light of the remainder of Plaintiff's pleadings, the Court cannot say that the amended complaint is so deficient as to not sufficiently allege that the lack of polices, training, and supervision as to other aspects of Plaintiff's claim created circumstances under which the policymaker's actions or inaction could be found to have communicated a message of approval to the offending subordinate and could reasonably be said to demonstrate deliberate indifference. For example, Plaintiff alleges that the Borough "fail[ed] to have a policy in place for reporting improper and illegal

conduct of supervising officers and/or other Police and/or Fire Department members",

"fail[ed] to properly train, discipline, control or sanction firefighters for having naked photos

of the rninor Plaintiff", and "fail[ed] to supervise, oversee, monitor, control, curtail or restrain

the actions of Semenza and Krenitsky when, upon information and belief, Old Forge

Borough knew from prior acts of misconduct by Semenza and Krenitsky, that there was an

obvious likelihood that other individuals could suffer physical and psychological injury. . . . "

(Doc. 125, ¶ 114(a)(vii), (b)(v), (c)(vi-vii)). Taken as true, these statements raise serious

issues that, if proven and a causal link established between the Borough's purported

failures and Plaintiff's injuries, could establish municipal liability.

Assuming Plaintiff sufficiently alleged facts that one or more of the final

policymaker's actions or inaction could be found to have communicated a message of

approval to the offending subordinates, Plaintiff must have also alleged both

contemporaneous knowledge of the offending incident or knowledge of a prior pattern of

similar incidents in order to establish § 1983 municipal liability. As previously noted,

Plaintiff's amended complaint states that "after reasonable opportunity to further investigate

or access discovery, the Mayor of Old Forge, the Borough of Old Forge, Old Forge Council,

Old Forge Hose and Engine and Semenza *knew or should have known* of the repeated

sexual encounters, comments and harassment between members of the Old Forge Police

Department and/or Old Forge Hose and Engine and Plaintiff." (Doc. 125, ¶ 89) (italics

added). Plaintiff further alleges, without any factual support, that the Borough was

deliberately indifferent "in failing to supervise, oversee, monitor, control, curtail or restrain the actions of Semenza and Krenitsky when, upon information and belief, *Old Forge Borough knew from prior acts of misconduct by Semenza and Krenitsky*, that there was an obvious likelihood that other individuals could suffer physical and psychological injury, thereby depriving such other individuals of constitutional rights." (*Id.* at ¶ 114(c)(iv)) (italics added). While these allegations barely "nudge[] [Plaintiff's] claims across the line from conceivable to plausible", *Twombly*, 550 U.S. at 570, taking as true Plaintiff's factual allegations in the amended complaint and the reasonable inferences that can be drawn from those facts, she has minimally raised a right to relief above the speculative level. The amended complaint indicates both the plausibility that a final policymaker was aware of the inappropriate sexual behavior towards Plaintiff and the knowledge of a prior pattern of similar incidents. Therefore, the Court will deny Defendants' motion to dismiss Count IV.

In light of the Court's analysis throughout this memorandum opinion, there remain only certain issues with respect to the Borough that must be addressed on summary judgment or at trial. As to the remaining issues, Plaintiff is placed on notice that her attempts to impose *Monell* liability on the Old Forge Borough on the bases that the Borough failed to enact or implement policies and failed to train and supervise its police and members of the OFHE must be supported by evidence of record showing that there are material issues of fact for trial as to the existence of a causal relationship between Plaintiff's sexual assaults by, and other unlawful sexual contact with, the individual defendants in this

case and the Borough's alleged failure to enact or implement policies and to train its

employees and agents on the duty to refrain from sexual contact with a minor.

## 2. Count V – 42 U.S.C. § 1983 – Violation of Substantive Due Process – Actions of Person with Final Authority

Count V of Plaintiff's amended complaint, entitled "42 U.S.C. § 1983 – Violation of

Substantive Due Process – Actions of  Person with Final Authority" is entirely premised on

the theory that the Mayor and Borough Council, and therefore the Borough, delegated final

authority to Semenza to "establish municipal policies for the Police Department", and

indirectly delegated to Semenza control over the operations of the OFHE and therefore the

final authority "to establish policies for the Old Forge Fire Department, namely Old Forge

Hose and Engine." (Doc. 125, ¶¶ 118-132; *see also*, Doc. 45).  While Count V does not

specifically identify the protected interest which forms the basis for Plaintiff's substantive

due process claim against the Borough, it does state that "Semenza made deliberate

choices to utilize this authority [delegated to him by the Mayor and/or Council] to sexually

assault the minor Plaintiff" (Doc. 125, ¶ 130), indicating that Plaintiff's substantive due

process claim is based on a constitutional right to bodily integrity.[8]  However, because the

Court has found that, as a matter of law, Semenza was not a final decisionmaker or final

policymaker, Plaintiff cannot impute any substantive due process violations by Semenza to

---

[8] The Court's ruling as to Count IV should not be understood as implying that claims against Semenza and Krenitsky for violations of Plaintiff's bodily integrity under the Fourteenth Amendment will not lie.  To the contrary, "bodily integrity" claims against these individual defendants present proper causes of action under the Fourteenth Amendment.

29

the Borough and her claim must therefore fail.  Thus, Defendants' motion to dismiss Count

V will be granted.

## C. Motion for a More Definite Statement

Finally, Defendants argue that the Court should order the plaintiff to file an amended

complaint setting forth the names of all of the parties on the basis that the interest of privacy

and/or security do not justify this suit being brought under a pseudonym.  (Doc. 34, at 19-

22).

"While not expressly permitted under Federal Rule of Civil Procedure 10(a),[9] in

exceptional cases courts have allowed a party to proceed anonymously.  That a plaintiff

may suffer embarrassment or economic harm is not enough.  Instead, a plaintiff must show

both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable. Examples

of areas where courts have allowed pseudonyms include cases involving abortion, birth

control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and

homosexuality." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (internal citations and

quotation marks omitted).  In determining whether a party should be allowed to proceed

under a pseudonym, the Third Circuit has endorsed the approach set forth in *Doe v.*

*Provident Life and Accident Insurance Company*.  *Megless*, 654 F.3d at 409-410 (citing *Doe*

*v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464 (E.D.Pa. 1997)).  In *Provident Life*, the

---

[9] Pursuant to Federal Rule of Civil Procedure 10(a), "Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."

Court set forth the following balancing test comprised of nine non-exhaustive factors that a

Court should take into consideration:

> The factors which support the use of pseudonymous litigation are as
> follows: (1) the extent to which the identity of the litigant has been kept
> confidential; (2) the bases upon which disclosure is feared or sought to be
> avoided, and the substantiality of these bases; (3) the magnitude of the public
> interest in maintaining the confidentiality of the litigant's identity; (4) whether,
> because of the purely legal nature of the issues presented or otherwise, there
> is an atypically weak public interest in knowing the litigant's identities; (5) the
> undesirability of an outcome adverse to the pseudonymous party and
> attributable to his refusal to pursue the case at the price of being publicly
> identified; and (6) whether the party seeking to sue pseudonymously has
> illegitimate ulterior motives.

> On the other side of the scale, the factors which militate against the use of a
> pseudonym are as follows: ([7]) the universal level of public interest in access
> to the identities of litigants; ([8]) whether, because of the subject matter of this
> litigation, the status of the litigant as a public figure, or otherwise, there is a
> particularly strong interest in knowing the litigant's identities, beyond the
> public's interest which is normally obtained; and ([9]) whether the opposition
> to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Provident Life*, 176 F.R.D. at 467-468.

An analysis of the *Provident Life* factors ultimately leads this Court to conclude that

Plaintiff cannot continue this civil action under a pseudonym.

First, Plaintiff admits that she "has testified in the criminal matters of James Krenitsky

and Lawrence Semenza", presumably including at Semenza's criminal trial. (Doc. 45, at

14). However, Plaintiff argues that "most of [Doe's] friends and her colleagues" do not know

about the past sexual abuse (*id.* at 15). This indicates that there are other friends and

family members who are already aware of the abuse at issue. Here, Plaintiff has made

serious allegations against Semenza, Krenitsky, and Chiavacci, as well as the Borough and OFHE, and she will be required to stand behind her claims publically, particularly when Doe's identity has been revealed in open court and therefore has not been kept in any strict confidence.

Plaintiff has also not provided any compelling argument to the Court in considering the bases upon which disclosure is feared or sought to be avoided and the substantiality of these bases. Doe broadly alleges that she wishes to remain anonymous "to avoid irreparable harm to her reputation professionally, to encourage other minor victims of heinous crimes to come forward and to prevent a negative social stigma." (Doc. 45, at 15). However, "[t]hat a plaintiff may suffer embarrassment or economic harm is not enough." *Megless*, 654 F.3d at 408. The fact that Plaintiff's professional reputation may be hurt or that she may lose clients is unfortunate, but provides an insufficient basis for this Court to find that the disclosure of her name creates a sufficiently pervasive harm such as to preserve her anonymity. The reasons advanced by Doe also fail to sufficiently allege that she has a reasonable fear of severe harm from litigating without a pseudonym. *See id.* Additionally, Plaintiff's brief in opposition to Defendants' motion assures the Court that she "will pursue her claim even if anonymity is denied" (Doc. 45, at 15), further negating the necessity of anonymity.

With respect to Plaintiff's age, this factor cuts both ways. While Doe was a child at the time of the assaults, a factor which weighs in favor of preserving her anonymity, her civil

32

lawsuit was not filed until she was 23 years old, and she is now well into adulthood, a factor which reduces the chance of her suffering severe emotional harm and allows her to better handle the reactions of those around her as well as any possible publicity.

Furthermore, the strong public interest in this case and in access to the identity of the litigant outweighs the public interest in maintaining the confidentiality of Doe's identity. While the public may have a substantial interest in maintaining the confidentiality of a minor plaintiff's name, particularly in helping to prevent the stigmatization and embarrassment of a child who has been sexually assaulted or abused, and also has an interest in helping to avoid deterring sexual assault victims from suing to vindicate their rights, this reasoning is more appropriately applied to criminal cases. Here, despite Plaintiff's assertion that Defendants' counsel is attempting to "revictimize" Doe, it was she who chose to bring this civil suit in pursuit of monetary damages. The individual perpetrators of the sexual acts against her have all been convicted of crimes and have served, or continue to serve, prison sentences. Plaintiff's suit now goes beyond looking to punish the individuals by including the Old Forge Borough. In making this an issue of public entity liability, Plaintiff has made her case an issue of substantial public interest, more so than had she only sued the individual actors.

Finally, despite Plaintiff's general assertion that the Borough's request "only serves to revictimize Jane Doe" (Doc. 45, at 15), the Court will not assume such an improper motive on the part of defendants without more, and there is no credible indication that either

party seeks to use, or opposes the use of, the pseudonym for illegitimate reasons, thus negating the import of both the sixth and ninth *Provident Life* factors.

As a result of the aforementioned considerations, the current action does not constitute an "exceptional" case wherein Plaintiff should be allowed to proceed anonymously. Rather, Doe has not sufficiently shown that she would suffer substantial harm that might sufficiently outweigh the public interest in open proceedings or that the disclosure of her identity may cause her to suffer irreparable harm. Defendants' motion for a more definite statement is therefore granted.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants Old Forge Borough, Old Forge Police Department, and Old Forge Fire Department's motions to dismiss (Docs. 30, 132). A separate Order follows.

Robert D. Mariani
United States District Judge