THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE | : |
| Plaintiff, | : |
| v. | : 3:12-CV-2236 |
| | : (JUDGE MARIANI) |
| OLD FORGE BOROUGH, et al. | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court are Defendants Lawrence Semenza and James Krenitsky's motions to partially dismiss Plaintiff's amended complaint (Docs. 126, 128). Defendants Old Forge Borough, Old Forge Police Department, and Old Forge Fire Department also filed motions to dismiss (Docs. 30, 132) which the Court will address in a separate opinion. The parties have fully briefed the motions, and they are ripe for decision. For the reasons set forth below, Defendants' motions to dismiss will be granted.

### II. PROCEDURAL HISTORY

Plaintiff, Jane Doe, filed her complaint (Doc. 1) on November 9, 2012 against Defendants Old Forge Borough, Old Forge Police Department, Old Forge Fire Department, Lawrence Semenza, Walter Chiavacci, and James Krenitsky. Each Defendant, with the exception of Chiavacci, subsequently filed a motion to dismiss (Docs. 17, 22, 30, 64). On November 12, 2014, the Court granted Plaintiff's motion for leave to file an amended

complaint and add an additional defendant and allowed each party file a new motion to dismiss, a supplement to its brief in support of the motion to dismiss previously filed, or to notify the Court if it wanted the Court to deem the previous motion to dismiss as resubmitted as to Plaintiff's amended complaint. (Doc. 109). As a result, Old Forge Borough and Old Forge Police Department filed a supplement (Doc. 134) to their prior motion and brief (Docs. 30, 34); Semenza and Krenitsky filed new motions to dismiss (Docs. 126, 128); Old Forge Fire Department filed a motion to dismiss (Doc. 132); and newly added defendant, Old Forge Hose & Engine Company, filed an Answer to the plaintiff's amended complaint (Doc. 122).

Plaintiff's amended complaint (Doc. 125) against Defendants Old Forge Borough, Old Forge Police Department, Old Forge Fire Department, Old Forge Hose & Engine Company, Lawrence Semenza, Walter Chiavacci, and James Krenitsky, set forth 22 counts including violations of Plaintiff's rights under 42 U.S.C. § 1983 against the Old Forge Borough, Old Forge Police Department, Old Forge Fire Department, Semenza, and Krenitsky (Counts I-V); violation of the Child Abuse Victims' Rights Act, 18 U.S.C. § 2255(a), by Semenza, Krenitsky, and Chiavacci (Count VI); childhood sexual abuse and vicarious liability (Count VII), negligence (Count VIII), negligent supervision (Count IX), and premises liability (Count X) by Old Forge Hose & Engine Company; negligence by Semenza and Krenitsky (Counts XI-XII); negligence per se by Semenza, Krenitsky, and Chiavacci (Counts XIII-XV); assault and battery by Semenza, Krenitsky, and Chiavacci (Counts XVI-XVIII);

negligent infliction of emotional distress by Semenza, Krenitsky, and Chiavacci (Counts XIX-XXI); and punitive damages against the Old Forge Hose & Engine Company, Semenza, Krenitsky, and Chiavacci (Count XXII).

### III. FACTUAL ALLEGATIONS

Plaintiff's amended complaint (Doc. 125) makes the following allegations:

Plaintiff Jane Doe was born in 1989. (Doc. 125, ¶ 1). The events at issue in Plaintiff's amended complaint began in July, 2004, when Plaintiff was 15 years old, and largely took place at the Old Forge Police Department and Old Forge Hose & Engine Company ("OFHE") both of which operate out of the same building. (Id. at ¶¶ 10-12, 17).

On or about July 10, 2004 while at a friend's house, Chiavacci,[1] who Plaintiff knew from her visits to the OFHE, approached Plaintiff to take a walk. (Doc. 125, ¶¶ 18, 19). During their walk, Chiavacci led Doe down a dark alley and began grabbing and kissing her, forcing himself on her and inserting his fingers into her vagina. (Id. at ¶¶ 20, 21). Plaintiff was eventually able to free herself from Chiavacci and run to safety. (Id. at ¶ 22). Over the next three years, Chiavacci begged Plaintiff not to say anything about the events of that night. (Id. at ¶ 23).

Following this incident, in approximately August, 2004, Doe was approached and encouraged by Semenza[2] to join the OFHE as a fire department member in the Junior

---

[1] Chiavacci, born in 1965, was a firefighter for the OFHE and resided full time at OFHE. (Doc. 125, ¶¶ 8, 24).
[2] Semenza, born in 1964, was a Police Officer and/or the Chief of Police with the Old Forge Police Department as well as Captain of the OFHE. (Doc. 125, ¶¶ 2-3).

3

Firefighter Program[3], applied to the program for which Chiavacci and Krenitsky[4] served as references on her application, and became a volunteer junior firefighter, effective September 1, 2004. (Doc. 125, ¶¶ 28, 30, 31). Plaintiff was given a key to the OFHE and was told that she could come there anytime. (*Id.* at ¶ 32).

As a junior firefighter, Plaintiff was required to report to Semenza and would, at Semenza's request and direction, frequently spend time alone with him in his offices at the OFHE and the Old Forge Police Department. (*Id.* at ¶ 34). Semenza encouraged Plaintiff to spend time at the OFHE, particularly when he worked the late shift as a police officer and/or a firefighter. (*Id.* at ¶ 55). Semenza also individually tutored Doe on different firefighting essentials before the skills were taught in a classroom setting. (*Id.* at ¶ 43). Plaintiff eventually grew to trust Semenza, spending all of her free time at the OFHE. (*Id.* at ¶ 56). Plaintiff alleges that Semenza "exerted his position of authority as a police officer and fire captain and used his uniform, which included a gun and an Old Forge Police and/or Old Forge Hose and Engine badge, to groom the fifteen (15) year old Plaintiff, get near the Plaintiff, gain the Plaintiff's trust and control the Plaintiff's successes with Old Forge Hose and Engine." (*Id.* at ¶ 35).

While the OFHE had the necessary gear for Plaintiff and new firefighters received used equipment, Semenza, who was responsible for distributing all gear to the members of

---

[3] The Junior Firefighter Program was established by OFHE, bylaws, Article V, Section 4. (Doc. 125, ¶ 29).
[4] Krenitsky, born in 1978, was a patrolman with and/or a Captain of the Old Forge Police Department and also a member of the OFHE. (Doc. 125, ¶¶ 5-6).

the OFHE, utilized the resources of the Old Forge Borough and OFHE to purchase new equipment and supplies for Doe in the fall of 2004. (Doc. 125, ¶¶ 38, 39). These purchases included a new leather helmet for which Semenza drove Plaintiff to a store to be specifically fitted, a dress uniform, t-shirts, sweatshirts, four job shirts, and tools, as well as a shower bag and shower items. (Id. at ¶¶ 40, 41).

Semenza also took Plaintiff to multiple locations, often in a police vehicle, including to training sessions, the mall, Walmart, Sam's Club and to the movies and would often buy her coffee, non-alcoholic drinks, and dinner. (Id. at ¶ 42).

In September, 2004, Semenza challenged Chiavacci and another firefighter from the OFHE to compete in a set of skills encompassing the OFHE's duties. Semenza and Doe, who were partners in this challenge, won the challenge and Semenza bought Doe a fourteen karat yellow gold Maltese cross and chain as a reward. (Id. at ¶¶ 44-46). Plaintiff wore the necklace every day but Semenza told her not to disclose that he had bought it for her. (Id. at ¶ 47).

Around October, 2004, Semenza and Doe drove alone to an OFHE training that they were attending together. During the car ride, Semenza praised Plaintiff and sang "Drift Away" by Dobie Gray to her which he referred to as "our" song. (Id. at ¶¶ 48, 49).

Between November 2004 and January 2005, Semenza was the lead instructor at an "Essentials of Firefighting" training, taking Plaintiff with him and using her as his aide. (Doc. 125, ¶¶ 51, 52). In December of 2004, Plaintiff also attended classes out of the area with

5

Semenza and Chiavacci where Semenza referred to Doe as his "sexy girlfriend," and treated her differently than other trainees. (*Id.* at ¶¶ 53, 54).

In December 2004, while Plaintiff was sitting on a countertop at the OFHE, Semenza approached her, spread her legs, and, standing between them, privately asked her what she wanted for Christmas. Doe responded that she had always wanted a claddagh ring and was later instructed by Semenza to go to a specific jewelry store in Old Forge to get fitted for the ring. Semenza gave her the fourteen karat white gold claddagh ring at Christmas of that year. (*Id.* at ¶¶ 60-63).

Beginning in January, 2005, Krenitsky began engaging in sexually suggestive conversations with Doe in the Old Forge Police Department and the OFHE, telling her in explicit terms the sexual acts he wanted to perform on her. Plaintiff then began an intimate relationship with him because she felt "intimidated and incapable of declining, as Krenitsky was dressed in police uniform, which included but was not limited to wearing his Old Forge Police badge and gun." (Doc. 125, ¶¶ 81, 82). Krenitsky would schedule times to meet Doe in the bunkroom of the OFHE where they would engage in sexual relations. (*Id.* at ¶ 83). After approximately 6 months, Krenitsky "abruptly and without reason ended the relationship." (*Id.* at ¶ 85).

In March of 2005, Plaintiff attended a Muncy Area Mutual Association training with Chiavacci and Semenza which was paid for by the Old Forge Borough and/or the OFHE. Plaintiff shared a room with Chiavacci but spent most of her time with Semenza who had a

separate hotel room. (*Id.* at ¶¶ 64-66). Upon their return from this training, Semenza told members of the Old Forge Police Department and the OFHE that he had engaged in sexual acts with Doe, causing her "embarrass[ment], harass[ment] and humiliat[ion] through both comments and actions by members of the Police Department and Old Forge Hose and Engine." (*Id.* at ¶¶ 67, 68).

In 2006, Semenza alleged at a meeting with members of the OFHE and the Old Forge Fire Department that he had naked photos of Doe. As a result, she was suspended from OFHE for 30 days. (Doc. 125, ¶¶ 74, 75).

Semenza continued to sexually abuse and assault Plaintiff until 2007, when his sexual advances toward her declined and eventually ended. (*Id.* at ¶¶ 76, 77).

According to Plaintiff, between 2004 and 2007, she and Semenza would often exchange instant messages to arrange times to meet when Semenza would be alone at either the Police Department or the OFHE. During this time frame, they would meet in the firehouse gym, bunkhouse, or kitchen, and Semenza would expose his genitals to her and engage in inappropriate sexual contact with her. On at least one occasion Semenza inserted his fingers into Doe's vagina at the OFHE. (*Id.* at ¶¶ 57-59). Semenza also instructed Plaintiff to shower at the firehouse before returning to high school or home. (*Id.* at ¶ 41). As a result, Plaintiff frequently showered at the OFHE and Semenza would use a butter knife to enter the locked bathroom and watch Plaintiff shower, which later progressed into acts of touching and groping. (*Id.* at ¶¶ 69-71). Semenza reportedly frequently referred

to Doe as "his girlfriend," "sexy" and "beautiful" in front of other firemen, police officers, and Borough personnel and would repeatedly and openly request that Doe have sex with him. (*Id.* at ¶¶ 72, 73).

Semenza's actions resulted in charges on May 9, 2012 of unlawful contact with a minor, indecent exposure, corruption of minors, indecent assault on a person less than 16 years of age, persons required to report suspected child abuse, and aggravated indecent assault on a person less than 16 years of age, and he was convicted of Corruption of a Minor and Person to Report Suspected Child Abuse on October 22, 2013. (Doc. 125, ¶¶ 78, 79). Krenitsky was charged on May 3, 2012 with involuntary deviate sexual intercourse with a person less than 16 years of age, corruption of minors, and indecent assault on a person less than 16 years of age, and pleaded guilty to Indecent Assault without Consent of Other on September 12, 2013. (*Id.* at ¶¶ 86, 87). As a result of the events of July 10, 2004, Chiavacci was charged on May 3, 2012 with aggravated indecent assault, corruption of minors, and indecent assault of a person less than 16 years of age. He pleaded guilty to Indecent Assault on a person less than 16 years of age on December 19, 2012 and was sentenced on January 27, 2014. (Doc. 125, ¶¶ 25-27).

At the time of the filing of the amended complaint, Semenza, Krenitsky, and Chiavacci were all serving sentences arising out of their actions against Plaintiff. (*Id.* at ¶¶ 27, 80, 88).

## IV. STANDARD OF REVIEW

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## V. ANALYSIS

Plaintiff brings seven counts against Krenitsky and eight counts against Semenza. However, both defendants each only move to have four claims dismissed: Child Abuse Victims' Rights Act (Count VI), negligence (Counts XI, XII), negligence per se[5] (Counts XIII, XIV), and negligent infliction of emotional distress (Counts XIX, XX). (Docs. 126, 128).

### A. 18 U.S.C. § 2255(a) – Child Abuse Victims' Rights Act

Count VI of Plaintiff's amended complaint, brought against Semenza, Krenitsky, and Chiavacci, alleges that "while a minor, Plaintiff was sexually abused by Defendants . . . in

---

[5] Semenza's motion to dismiss initially requests the dismissal of only two of the negligence claims, Counts XI and XIX (Doc. 126, at 1), and Krenitsky's motion to dismiss also initially only requests the dismissal of two of the negligence claims, Counts XII and XX (Doc. 128, at 1). However, both motions later state that the defendant at issue is seeking the dismissal of "all three negligence claims" (Doc. 126, ¶ 13; Doc. 128, ¶ 13). Both parties' briefs also make clear that they are seeking the dismissal of the three negligence claims, including negligence per se. (*See* Doc. 127, at 10; Doc. 129, at 8).

violation of state and federal law" thereby violating 18 U.S.C. §§ 2242 and 2243. (Doc. 125, ¶¶ 134-135).

Pursuant to 18 U.S.C. § 2255(a):

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a).

At issue here is whether 18 U.S.C. § 2242 and/or 18 U.S.C. § 2243 are applicable to the individual defendants for purposes of creating civil liability. Section 2242, entitled "sexual abuse", and § 2243, entitled "sexual abuse of a minor or ward", both criminalize sexual abuse occurring "in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency." 18 U.S.C. §§ 2242, 2243. There is no question that the sexual abuse of Doe did not take place "in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency" and therefore liability could only be imposed if the crimes against Doe were alleged in the amended complaint to have

11

occurred "in the special maritime and territorial jurisdiction of the United States". Pursuant to 18 U.S.C. § 7, the term "special maritime and territorial jurisdiction of the United States" applies in nine circumstances,[6] none of which are alleged, nor applicable, in the present

---

[6] The term "special maritime and territorial jurisdiction of the United States" includes the following circumstances:

> (1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.
>
> (2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.
>
> (3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.
>
> (4) Any island, rock, or key containing deposits of guano, which may, at the discretion of the President, be considered as appertaining to the United States.
>
> (5) Any aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, district, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.
>
> (6) Any vehicle used or designed for flight or navigation in space and on the registry of the United States pursuant to the Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and Other Celestial Bodies and the Convention on Registration of Objects Launched into Outer Space, while that vehicle is in flight, which is from the moment when all external doors are closed on Earth following embarkation until the moment when one such door is opened on Earth for disembarkation or in the case of a forced landing, until the competent authorities take over the responsibility for the vehicle and for persons and property aboard.
>
> (7) Any place outside the jurisdiction of any nation with respect to an offense by or against a national of the United States.

case. Plaintiff does not attempt to argue otherwise, instead stating that "[n]either the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has issued opinions regarding 18 U.S.C. § 2255" (Doc. 139, at 7) and citing one Middle District of Pennsylvania case wherein the Court recognized a cause of action against the Diocese of Scranton pursuant to § 2255 (*id.* at 7-8 (citing *Doe v. Liberatore*, 478 F.Supp.2d 742 (M.D.Pa. 2007))). However, Plaintiff's reliance on *Liberatore* is misplaced where, in that case, Plaintiff's § 2255 claim was premised on violations of 18 U.S.C. §§ 2421, 2422, and 2423, none of which require the application of the definitions provided in 18 U.S.C. § 7.[7] Rather, courts which have addressed § 2255 claims based on statutes which require the crime to have been committed "in the special maritime and territorial jurisdiction of the United States" have strictly applied the nine circumstances enumerated in 18 U.S.C. § 7.

---

> (8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.
>
> (9) With respect to offenses committed by or against a national of the United States as that term is used in section 101 of the Immigration and Nationality Act--
> (A) the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership; and
> (B) residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

18 U.S.C. § 7.

[7] 18 U.S.C. §§ 2421, 2422, and 2423, all involve transportation of an individual in "interstate and foreign commerce". These statutes do not require that the crime occur within the "special maritime and territorial jurisdiction of the United States".

13

*See Gray v. Darby*, 2009 WL 805435 (E.D.Pa. 2009) (where a Pastor allegedly sexually abused a minor at a childcare and school facility located on the premises of the church, the Court dismissed a § 2255 claim against the Conference of the United Methodist Church and the Limeville United Methodist Church which was predicated on violations of §§ 2241 and 2242 because, in relevant part, Plaintiff failed to plead facts alleging that the defendants' actions took place within the special maritime and territorial jurisdiction of the United States); *Cisneros v. Aragon*, 485 F.3d 1226 (10th Cir. 2007) (finding that Plaintiff failed to offer sufficient evidence to support her claim that Defendant's acts occurred on federal land, as necessitated under §§ 2242 and 2243, and therefore "failed to establish an essential element of her § 2255 claims.").

Here, Plaintiff has failed to allege that any of the sexual abuse perpetrated against her by the individual defendants occurred within the "special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency", 18 U.S.C. §§ 2242, 2243. Rather, Doe has alleged that Semenza sexually abused and harassed her at the Old Forge Police Department, OFHE, and at training courses, and that Krenitsky engaged in sexually suggestive conversations with her in the Old Forge Police Department and OFHE, and engaged in sexual relations with her "in the bunkroom of Old Forge Hose and Engine" (Doc. 125, ¶¶ 81, 83).

Accordingly, Defendants' motion to dismiss Count VI will be granted.[8]

## B. Negligence, Negligence Per Se, and Negligent Infliction of Emotional Distress

Defendants also move for the dismissal of the negligence claims against Semenza and Krenitsky (Counts XI and XII respectively), the negligence per se claims (Counts XIII and XIV respectively), and the negligent infliction of emotional distress claims (Count XIX and XX respectively), all on the basis that the claims are barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). (Doc. 127, at 8-11; Doc. 129, at 6-9).

Pursuant to the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 *et seq.*, a local agency cannot be held "liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. The Act provides for eight exceptions to this rule: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility services facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. Cons. Stat. Ann. § 8542(b). Additionally,

> [m]unicipal employees . . . are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment. 42 Pa. Cons.Stat. § 8545. However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to "actual malice" or "willful misconduct".

---

[8] In light of the Court's analysis, the allegations against Chiavacci in Count VI also do not adequately plead that the defendant's actions took place within the "the special maritime and territorial jurisdiction of the United States", instead only alleging that the assault took place in a "dark alley".

15

*Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). The Pennsylvania Supreme Court has recognized willful misconduct as requiring a demanding level of fault. *Id.* "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" *Id.* (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). "Otherwise stated, 'the term "willful misconduct" is synonymous with the term "intentional tort."'" *Id.*

Plaintiff admits that none of the enumerated exceptions to the PSTCA apply here, instead arguing, without citation, that the presence of a special relationship between the individual defendants and Doe provides an exception to the PSTCA. (Doc. 139, at 9,10). This argument conflates the requirements of the PSTCA and a waiver of immunity due to a special relationship. Pennsylvania case law makes clear that a special relationship is not an exception to the PSTCA, but rather a doctrine that may create a cause of action where one would not otherwise exist. *See Johnson v. City of Philadelphia*, 657 A.2d 87, 89 (Pa. Commw. Ct. 1995) ("[T]he special relationship doctrine creates a common law cause of action that, otherwise, would not exist. It does not eliminate the requirement that the plaintiff show that the alleged negligence falls within an enumerated exception to immunity."); *Morris v. Musser*, 478 A.2d 937, 939-940 (Pa. Commw. Ct. 1984) (finding that the lower court erred in granting a police officer immunity under the PSTCA because the officer's alleged behavior, if proven at trial, would constitute willful misconduct, and subsequently because

16

there was no immunity, engaging in an analysis of what duty was owed to plaintiff). Because the PSTCA permits recovery against a local agency or its employee only for negligent acts that fall within the enumerated exceptions, which Plaintiff admits are not applicable, and a claim for negligence is clearly distinct from that for an intentional tort,[9] Plaintiff's claims based on negligence, negligence per se and negligent infliction of emotional distress[10] are barred by the PSTCA.

Plaintiff's factual allegations throughout the entirety of the amended complaint unequivocally indicate that the actions perpetrated by Semenza and Krentitsky were intentional, and indeed, this would have to be her argument should she hope to sustain the majority of her claims. Plaintiff does not plead negligence in the alternative and cannot now have it both ways – contending that Defendants' actions were wholly intentional but requesting that they be held liable for negligent behavior.[11]

The counts for negligence, negligence per se, and negligent infliction of emotional distress are all state law claims that do not fall within one of the eight exceptions to the PSTCA. Thus, the individual defendants would only lose their immunity if their conduct

---

[9] To the extent that Plaintiff had alleged state law claims based on an intentional tort, such as intentional infliction of emotional distress, the PSTCA would not have granted Defendants' immunity. Indeed, Defendants did not move to dismiss the state law claims for assault and battery, presumably because they were aware that immunity would not, and could not, apply.

[10] A cause of action for negligence per se and negligent infliction of emotional distress are necessarily premised on a theory of negligence.

[11] For example, Plaintiff's claims of negligent infliction of emotional distress allege that Semenza and Krenitsky "acted negligently and created an unreasonable risk of bodily harm to Plaintiff . . . when [they] sexually groomed and assaulted Plaintiff." (Doc. 125, ¶¶ 238, 244). The terms "acted negligently" and "sexually groomed and assaulted Plaintiff" are irreconcilable given that the latter clearly requires that defendants' conduct was intentional.

amounted to "actual malice" or "willful misconduct." Because both of these requirements necessarily require a higher level of fault than mere negligence, these three claims fail as a matter of law and will be dismissed with prejudice.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant Defendants Lawrence Semenza and James Krenitsky's motions to partially dismiss Plaintiff's amended complaint (Docs. 126, 128). A separate Order follows.

Robert D. Mariani
United States District Judge