THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NASTASHA BURDYN | : |
| | : |
| **Plaintiff,** | : |
| v. | : **3:12-CV-2236** |
| | : **(JUDGE MARIANI)** |
| **OLD FORGE BOROUGH**, et al. | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Old Forge Hose & Engine Company's

("OFHE") Motion for Summary Judgment (Doc. 165).  Defendant Old Forge Borough also

filed a motion for summary judgment (Doc. 186) which the Court will address in a separate

opinion.  The parties have fully briefed the motion, and it is ripe for decision.  For the

reasons set forth below, Defendant OFHE's motion for summary judgment will be granted in

part and denied in part.

### II. PROCEDURAL HISTORY

Plaintiff, Jane Doe, filed her complaint (Doc. 1) on November 9, 2012 and

subsequently filed an amended complaint on December 3, 2014 (Doc. 125).  Plaintiff's

amended complaint named as Defendants Old Forge Borough, Old Forge Police

Department, Old Forge Fire Department, Old Forge Hose & Engine Company, Lawrence

Semenza, Walter Chiavacci, and James Krenitsky, and set forth 22 counts including

violations of Plaintiff's rights under 42 U.S.C. § 1983 against the Old Forge Borough, Old

Forge Police Department, Old Forge Fire Department, Semenza, and Krenitsky (Counts I-

V); violation of the Child Abuse Victims' Rights Act, 18 U.S.C. § 2255(a), by Semenza,

Krenitsky, and Chiavacci (Count VI); childhood sexual abuse and vicarious liability (Count

VII), negligence (Count VIII), negligent supervision (Count IX), and premises liability (Count

X) by Old Forge Hose & Engine Company; negligence by Semenza and Krenitsky (Counts

XI-XII); negligence per se by Semenza, Krenitsky, and Chiavacci (Counts XIII-XV); assault

and battery by Semenza, Krenitsky, and Chiavacci (Counts XVI-XVIII); negligent infliction of

emotional distress by Semenza, Krenitsky, and Chiavacci (Counts XIX-XXI); and punitive

damages against the Old Forge Hose & Engine Company, Semenza, Krenitsky, and

Chiavacci (Count XXII).

Each Defendant, with the exception of Chiavacci and the Old Forge Hose & Engine

Company, filed motions to dismiss. On July 1, 2015, the Court ruled on the motions,

dismissing Defendants Old Forge Fire Department and Old Forge Police Department, and

dismissing Count V (42 U.S.C. § 1983 - violation of substantive due process (actions of

person with final authority)), Count VI (18 U.S.C. § 2255(a)), Counts XI and XII (negligence),

Counts XIII and XIV (negligence per se), and Counts XIX and XX (negligent infliction of

emotional distress). (Docs. 176, 178). The Court also ruled that Plaintiff could not proceed

using a pseudonym and ordered Plaintiff to re-file her amended complaint using her legal

name. Plaintiff thereafter filed an amended complaint on July 14, 2015 (Doc. 179) wherein the addition of her name, Nastasha Burdyn, constituted the only change.

### III. STATEMENT OF UNDISPUTED FACTS

Defendant, OFHE has submitted a Statement of Material Facts (Doc. 166) as to which it submits there is no genuine issue or dispute for trial. Plaintiff submitted a "Counterstatement of Material Facts" (Doc. 170)[1] with the result being that the following facts have been admitted except as specifically noted:

OFHE is a private, Pennsylvania non-profit corporation. (*See* Am. Compl., Doc. 125, at ¶ 12; OFHE Answer, Doc. 122, at ¶ 12; Am. Compl., Doc. 179, at ¶ 12). OFHE is one of three volunteer fire companies serving the Borough of Old Forge. (Doc. 166, at ¶ 1). OFHE, which shares a building with Lawrence Hose, another volunteer fire company in the Borough of Old Forge, is attached to the Borough building. The building is equally accessed by members of both Lawrence Hose and OFHE. (*Id.* at ¶ 4). The Old Forge Borough Police Department is also located in the Old Forge Borough Building. (*Id.* at ¶ 5).

Lawrence Semenza was employed by the Borough of Old Forge as a police officer, starting in a full-time capacity in or around 1989. (*Id.* at ¶ 7). Semenza was appointed Officer in Charge of the Old Forge Police Department on January 31, 2005 by the Borough Council of the Borough of Old Forge. (Borough of Old Forge Resolution No. 2005-9, Doc. 170-2). From 2004 through 2007, Semenza was also the volunteer Captain of OFHE.

---

[1] Instead of responding to each of Defendant's numbered paragraphs with "admitted" or "denied", Plaintiff responds with "not contested", "contested", or "contested to the extent that . . . ." The Court deems these statements to mean "admitted", "denied", or "admitted in part and denied in part" respectively.

(Doc. 166, at ¶ 8).[2]  According to Semenza, in his role as Captain, he "basically ran the fire company from purchasing equipment, scheduling training, making sure the maintenance of the apparatus." (Trial Tr., Oct. 21, 2013, at 216).  According to Aulisio,[3] former Captain of the OFHE, "the captain was overall in charge of the company itself and its day-to-day function", and was "the one pretty much looking out what's going on with the department; whatever the company needs, different things like that, you know, as far as the membership." (Dep. of Aulisio, at 21-22).  This included the captain being in charge of the junior firefighters, and Semenza, as the Captain of OFHE, was responsible for the training of any junior members and overseeing their training.  (Id. at 55, 56, 70; see also, Doc. 166, at 8, 11; Doc. 170, at 8, 11).  The captain would also be responsible for implementing policies and procedures for OFHE. (Dep. of Aulisio, at 22).

Volunteer membership at OFHE is open to both males and females over the age of eighteen in three categories: active regular; inactive regular; and social. (Doc. 166, at ¶ 9). Additionally, OFHE has a junior member program.  During the relevant time period for this case, junior firefighters had to be fourteen years of age, be sponsored by an active regular

---

[2] Plaintiff "contests" this statement of material fact, stating that "Semenza's role as Captain of OFHE was not only from 2004 through 2007". (Doc. 170, at ¶ 8). Plaintiff does not point to any evidence that this timeframe is incorrect, only stating that according to Ron Coles, a member of the OFHE, Semenza helped draft the OFHE 1991 by-laws. (Id.). However, the 1991 by-laws specifically state that Robert Aulisio is the Captain and Semenza is a lieutenant and a participant in the by-law committee. (See Doc. 167-12). Semenza's role in helping to draft the OFHE by-laws in 1991 does not negate Defendant's statement of fact regarding the dates of Semenza's tenure as Captain of the OFHE.

[3] From 1993 through 2009 Robert Aulisio was the Chief of the Old Forge Fire Department, which is comprised of the three volunteer companies, including OFHE. Prior to becoming Chief of the Fire Department, Aulisio was the Captain of OFHE. (Doc. 166, at ¶ 2).

member, and submit an application to the OFHE membership before being accepted into the company. (*Id.* at ¶ 10).

During the late spring through approximately July of 2004, Burdyn was in a romantic, consensual sexual relationship with OFHE volunteer firefighter, Lieutenant Brian Wruble. She does not claim that this relationship was inappropriate in nature despite the fact that he was several years older than she at the time. (Doc. 166, at ¶ 12).[4] "Several months prior" to dating Wruble, Plaintiff met Chiavacci at the fire station while walking down Main Street and only knew him "socially" i.e. outside the context of his being a member of the OFHE. (Dep. of Burdyn, at 238-239).

On or about July 10, 2004, Burdyn attended a concert in Moosic, Pennsylvania. Following the concert she attended a party at a friend's residence, which Chiavacci also attended. (Doc. 166, at ¶ 15). This party was a social gathering that was not related to membership at OFHE and was not held in the OFHE building. (*Id.* at ¶ 16). At the party, Burdyn became upset over the recent end of her relationship with Wruble. Chiavacci offered to take a walk with Plaintiff, which she consented to because she trusted him as a friend. (*Id.* at ¶ 17).

Plaintiff alleges that while alone on the walk with her, Chiavacci forcibly hugged and kissed her and digitally penetrated her vagina. (Doc. 166, at ¶ 18). Chiavacci admitted that he put "his arms around her" from behind and put his "finger in her vagina." (Chiavacci

---

[4] It is unclear how old Brian Wruble was at the time of his sexual relationship with Burdyn. Plaintiff testified at one point in her deposition that she "believe[d] he was 17 or 18" but later stated that he was "18 or 19." (Dep. of Burdyn, at 82, 426)

Statement Under Oath, Doc. 170-14, at 19). Burdyn and Chiavacci did not have sexual

contact prior to or following the July 10th encounter and at no time following the incident did

Plaintiff report she was fearful of Chiavacci in any way. (Doc. 166, at ¶¶ 20, 21). Until

coming forward in 2011, Burdyn did not report the July 10th encounter to anyone at OFHE,

to any law enforcement officials, to her parents, or to her friends. (Id. at ¶¶ 22, 23).

In or around September of 2004, Plaintiff applied for junior membership with OFHE

and listed Krenitsky and Chiavacci as references. (Doc. 166, at ¶ 24).[5] Although the parties

agree that Plaintiff became a junior member of OFHE on or about September 1, 2004 (id. at

¶ 26), Plaintiff's membership application is dated September 20, 2004 (Old Forge Hose &

Engine Co. Membership Application, Doc. 167-13).

Burdyn alleges that shortly after joining OFHE, Semenza began buying her new

firefighting equipment and shower items, and that he also purchased a ring and a necklace

with a Maltese cross charm for her. (Doc. 166, at ¶ 27). Plaintiff further alleges that a

"sexual relationship"[6] eventually began with Semenza in or around late 2004 and ended in

2007. (Id. at ¶ 28). Plaintiff's mother did not think that there was anything unusual about

Semenza giving her daughter the charm, as "it was a prominent emblem for the fire

---

[5] Although Plaintiff appears to "contest" this statement of fact, at least in part, her argument is non-responsive to the statement, and Plaintiff's OFHE Membership Application (Doc. 167-13) confirms Defendant's straight-forward factual statement.

[6] The Court places the words "sexual relationship" in quotation marks, recognizing Plaintiff's objection to the term "because Plaintiff was fifteen (15) years of age when the inappropriate relationship began with Semenza and Plaintiff was unable to consent." (Doc. 170, at ¶ 28).

department and a lot of firefighters have that particular charm." She thought it was nothing more than an appropriate gift for a job well done. (*Id.* at ¶ 29).

Citing only to the deposition testimony of Burdyn's mother, Defendant OFHE asserts that "[d]uring the time that [Plaintiff] was a junior member of OFHE, she would only spend a couple of days a week at the firehouse, maybe ten hours total." (Doc. 166, at ¶ 40). However, according to Burdyn herself, until at least 2006, she spent as much time at the OFHE as possible, including spending most of her time at the fire house on weekends and was there "for the most part" every day during the summertime. (Dep. of Burdyn, at 41-42; *see also*, Trial Tr., Oct. 16, 2013, at 103-104 (agreeing that she was at the firehouse almost daily and that if she was not at school or at home, she was "for the most part" at the firehouse)).

Plaintiff testified that during her membership with OFHE, she was called into a meeting with Semenza, Aulisio, and James Williams regarding Semenza having a naked picture of her that was reportedly taken in the OFHE firehouse. She additionally stated that she was issued a suspension for the picture despite never being shown a copy. (Doc. 166, at ¶ 30). Williams, Captain of Lawrence Hose during the relevant time period, testified that he never saw any inappropriate pictures of Burdyn or ever had anything of that nature brought to his attention. (*Id.* at ¶ 31). Aulisio testified that he did not know anything about Burdyn's suspension because of an alleged nude photograph, and did not recall a nude

7

photo. (Dep. of Aulisio, at 83-85). He did recall photos taken for a calendar and that "some [of] our gear was in the picture and we weren't really all that happy with it." (*Id*. at ¶ 84).

James Krenitsky was employed by the Borough of Old Forge as a police officer, starting in 1998. (Doc. 166, at ¶ 6). In or around January of 2005, Krenitsky and Plaintiff entered into a "sexual relationship"[7]. (*Id*. at ¶ 33). The sexual relationship lasted until approximately June, 2005. (*Id*. at ¶ 37).

According to Krenitsky, he and Burdyn would meet behind the police department where they would talk and then they would go into the bunk room of the fire department. (Proffer of Krenitsky, at 15-16). The purpose of "meeting up or getting together" was to engage in oral sex. (*Id*. at 15). According to Burdyn, the relationship between her and Krenitsky "became more physical later into February, mid-February, probably early March, where we would talk to each other and schedule a meeting time to meet in the bunk room of the Old Forge Fire Department where we would perform sexual acts on each other." (Tr. Prelim. Hr'g, June 27, 2012, at 11).

Prior to coming forward in 2011, Burdyn did not tell Krenitsky that she had a sexual encounter or inappropriate relationship with Chiavacci or Semenza. (Doc. 166, at ¶ 52). Prior to the allegations being made against him, Krenitsky testified that he did not tell anyone about his relationship with the plaintiff and he does not believe Semenza had any knowledge of it. (*Id*. at ¶ 53).

---

[7] Similarly to Semenza, the Court puts the words "sexual relationship" in quotation marks in recognition of Plaintiff's objection that "in January of 2005, Plaintiff, who was born in 1989, was a minor, unable to consent to a sexual relationship with James Krenitsky." (Doc. 170, at ¶ 33).

It was not until 2011 that Plaintiff filed any type of complaint which related to Semenza, Krenitsky or Chiavacci. (Doc. 166, at ¶ 49). Prior to coming forward in 2011, Burdyn never told anyone affiliated with OFHE about the averred relationships and/or averred sexual encounters she had with Chiavacci, Krenitsky or Semenza. (Doc. 166, at ¶ 42). Before 2011, Burdyn never reported the averred sexual relationships or encounters to law enforcement or the respective boards of any other organizations with which the men were affiliated, including to the Board of OFHE. (Doc. 166, at ¶¶ 46, 47).

Burdyn testified that she never reported the sexual relationship with Semenza or Krenitsky to the police prior to May 2, 2012. (Dep. of Burdyn, at 262). When asked whether she "ever complain[ed] to anyone at the Old Forge Borough, be it a Council person, be it the Mayor, did [she] ever complain to any Borough of Old Forge official about the conduct of Mr. Krenitsky or the conduct of Mr. Semenza of which [she] now complain[s] in this lawsuit", Plaintiff testified that she did not and explained that she "didn't feel it necessary at the time." (Dep. of Burdyn, at 304). Burdyn stated that during the time in question, if anybody would have asked about the nature of her relationship with Semenza, she would have denied anything inappropriate and would have done so up to 2011. (Doc. 166, at ¶ 50).

## IV. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

9

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323

(1986). Once such a showing has been made, the non-moving party must offer specific

facts contradicting those averred by the movant to establish a genuine issue of material fact.

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party

may not oppose summary judgment simply on the basis of the pleadings, or on conclusory

statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a

fact cannot be or is genuinely disputed must support the assertion by citing to particular

parts of materials in the record . . . or showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating

whether summary judgment should be granted, "[t]he court need consider only the cited

materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Inferences should be drawn in the light most favorable to the non-moving party, and where

the non-moving party's evidence contradicts the movant's, then the non-movant's must be

taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.

1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## V. ANALYSIS

OFHE moves for summary judgment with respect to all five state law claims asserted against it by Plaintiff: childhood sexual abuse and vicarious liability (Count VII), negligence (Count VIII), negligent supervision (Count IX), premises liability (Count X), and punitive damages (Count XXII). The Court will address these claims in turn.

### A. Childhood Sexual Abuse and Vicarious Liability (Count VII)[8]

Count VII of Plaintiff's Amended Complaint (Doc. 179) alleges that Krenitsky and Semenza were members of the OFHE at all relevant times and that OFHE "had reason to know, or should have had reason to know, that Defendants Krenitsky and Semenza were

---

[8] Although the count for vicarious liability was adorned with the further description of Childhood Sexual Abuse, Plaintiff fails to advance any argument other than those based on the tort of vicarious liability, leaving the Court to guess at why she entitled the claim as she did and what additional legal principles would support it.

engaging in inappropriate conduct with Plaintiff" and that OFHE's "acts and/or omissions were negligent to the then minor Plaintiff's rights and Defendant [OFHE] is vicariously liable for the torts and skullduggery committed by" Semenza and Krenitsky. (Id. at ¶¶ 139, 140, 146, 147).

Under Pennsylvania law, the extent to which an employer can be held vicariously liable for the actions of an employee is "well-established and crystal clear." *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 699 (Pa. Super. Ct. 2000). State law provides that "an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment." *Id.* (citing *Fitzgerald v. McCutcheon,* 410 A.2d 1270, 1271 (Pa. Super Ct. 1979)). An employee is considered to be acting "within the scope of employment" for purposes of vicarious liability if

> (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer.

*Id.*

Preliminarily, although neither party cites to the Court's prior opinion, this Court has already determined the issue of whether Semenza and Krenitsky were acting "within the scope of employment" for the police department. In *Aspen Specialty Insurance Company v. Old Forge Borough*, this Court adopted Magistrate Judge Martin Carlson's finding in a

Report and Recommendation that both individual defendants were acting outside the scope

of their employment for purposes of coverage under the Borough of Old Forge's insurance

policy. (See 3:13-cv-127, Docs. 35, 39). In ruling on Aspen Insurance Company's motion

for summary judgment, the Magistrate Judge found that "nothing in the underlying complaint

[ ] could conceivably by read to suggest that such sexual abuse was undertaken as part of

the defendants' law enforcement capacity, and in any event Pennsylvania law has

consistently held that such conduct is so outrageous, and is purely motivated by personal

reasons without any conceivable motive to further the employer's interests, that it cannot be

deemed to have been undertaken as part of an employee's official responsibilities." (Id. at

Doc. 35 at 19-20).[9]

Magistrate Judge Carlson's findings are equally applicable to OFHE's arguments

that neither Krenitsky nor Semenza were acting within the scope of their employment and

we refer the parties to his discussion of this issue in the Report and Recommendation (3:13-

cv-127, Doc. 35). Although at issue here is the individual defendant's roles in OFHE, as

opposed to the police department, the acts of these defendants as alleged by Plaintiff and

admitted to by Krenitsky, still cannot be considered to have been undertaken in any way as

---

[9] The Court's finding in Aspen Insurance that Semenza and Krenitsky were not acting within the
scope of their employment as police officers does not affect this Court's analysis in its Memorandum
Opinion denying the Borough of Old Forge's motion for summary judgment and finding that there is a
material issue of fact with respect to whether these individual defendants were acting under color of state
law. See Zion v. Nassan, 283 F.R.D. 247, 267 (W.D. Pa. 2012) ("The actions of a state official may
'constitute state action for purposes of the Fourteenth Amendment' even when they exceed the limits of the
official's authority. This court has already recognized that a police officer may sometimes act both 'under
color of state law' and beyond the scope of his or her employment.")(quoting Hichenbottom v. Nassan,
2007 WL 7753803, at *43 (W.D. Pa. 2007) (internal citation omitted)).

13

part of either defendant's employment, nor can it be said to even plausibly have been undertaken to further the employer's interests.[10]

Furthermore, with respect to Krenitsky, Plaintiff's claim fails for the simple reason that there is no record evidence that this defendant was ever an employee or volunteer for OFHE during the relevant time period. OFHE argues that it cannot be held vicariously liable for Krenitsky's actions because he "was not a member of OFHE at any of the times relevant to [Burdyn's] lawsuit and [Burdyn] is unable to produce any evidence which established he was in any way affiliated with OFHE during the times of their relationship." (Doc. 167, at 5). Plaintiff counters that the nature of Krenitsky's relationship with OFHE is a question of fact for a jury. (Doc. 171, at 9).

At best, the evidence of record points to Krenitsky being a social member of OFHE in or around 2009, almost four years after his sexual encounters with Plaintiff. According to Krenitsky, he did not ever have a professional relationship with OFHE and although he was a "social member" of the OFHE for one or two years because he gave a $5 donation, he did not understand this membership as entitling him to participate in any events at the

---

[10] In Pennsylvania, "volunteer firefighter" is defined as

A person who is a member of:

(1) a fire company organized and existing under the laws of this Commonwealth;

(2) a fire police unit, rescue squad, ambulance corps or other like organization affiliated with one or more fire companies; or

(3) a fire company or affiliated organization which participates in the fire service but does not look to that service as his or her primary means of livelihood.

35 Pa.C.S.A. § 7412. Neither party raises an issue regarding the equivalency of the terms "volunteer firefighter" and "employee", i.e. whether a volunteer firefighter can subject a volunteer fire company to the same liability as an employee can on his or her employer. Thus, the Court will consider the terms interchangeable for purposes of this motion.

firehouse. (Dep. of Krenitsky, at 122-126, 158-159).[11]  Further, despite Plaintiff's argument

that Krenitsky could not recall when he was a member of OFHE (Doc. 171, at 8-9), which is

supported by the record, Krenitsky did testify that he had no affiliation with OFHE in 2004.

(Dep. of Krenitsky, at 126).  To the extent that Plaintiff argues that Robert Aulisio "the Old

Forge Fire Department Chief at all relevant times, stated that Krenitsky, along with a lot of

police, had a key and free access to the firehouse and frequently hung out there" (Doc. 171,

at 9) as support for the proposition that Krenitsky was a member of OFHE, this statement

actually belies Plaintiff's own argument by admitting that Krenitsky's presence in the OFHE

firehouse did not necessarily mean that he had any formal relationship with the volunteer

fire department, but rather, would just "hang out" there.  Plaintiff's whole argument thus

relies on the Court accepting that documents which would have demonstrated Krenitsky

was a member of OFHE "disappeared" under suspicious circumstances, and that every

witness who testified on the issue of Krenitsky's lack of participation in OFHE either lied or

forgot that he was a member of OFHE in 2004 and/or 2005.  Even Plaintiff herself did not

offer any testimony that Krenitsky was a member of OFHE at the time of their sexual

encounters, that he participated in any OFHE events, or that he went out on any calls for the

volunteer fire department.  Therefore, in the absence of any record evidence that Krenitsky

was associated with OFHE in 2004 or 2005, he cannot be considered a volunteer or

employee of OFHE, a threshold for the imposition of vicarious liability and OFHE cannot be

---

[11] According to the Old Forge Hose & Engine Company Station 932 By-Laws, "all social members
can participate in events/activities as dictated by company officers [but s]ocial members cannot vote and do
not have any say in the conduct or mission of this company."  (Doc. 167-2, Art. V, § 3).

held vicariously liable for his actions with Plaintiff. As this Court has already found that Krenitsky was not acting within the scope of his employment as a police officer, there is nothing to which Plaintiff can point to salvage her vicarious liability claim with respect to Krenitsky's actions.

Regarding Chiavacci, the Court notes that Count VII of Plaintiff's Amended Complaint only references Semenza and Krenitsky, not Chiavacci, thus appearing that Plaintiff was attempting to impose vicarious liability on the OFHE only for the acts of Krenitsky and Semenza. Plaintiff's brief in opposition to OFHE's motion for summary judgment briefly now argues that because Chiavacci resided in the firehouse from 1999 until 2011 or 2012 and was allegedly wearing an OFHE t-shirt at the time of his assault on Plaintiff, "it can be argued that Chiavacci represented OFHE full time, twenty four (24) hours a day." (Doc. 171, at 9). Plaintiff does not offer any further argument on the subject. Regardless, this argument exceeds reason and belief. OFHE cannot be held vicariously liable for any sexual assault on the part of Chiavacci when the only allegations against him arose two months prior to Plaintiff joining OFHE, occurred on a walk following a friend's party and not on OFHE property, and were unrelated to OFHE or Chiavacci's position in OFHE. Chiavacci's residence and casual attire, particularly when considered in conjunction with the timing of his assault on Plaintiff, are insufficient to rebut OFHE's contention that Chiavacci was not acting within the scope of his employment as a volunteer firefighter.

For the forgoing reasons, the Court will grant Defendant OFHE's motion for summary judgment on Count VII of Plaintiff's Amended Complaint.

## B. Negligence (Count VIII)

In Count VIII, Plaintiff alleges that OFHE "had a duty to protect the minor Plaintiff, as her care, welfare and/or physical custody was temporarily entrusted to [OFHE] when Plaintiff was on properties or premises, or at events and trainings sponsored or controlled by" OFHE and that the defendant breached its duty of care "by failing to protect the Plaintiff from foreseeable harm of the sexual misconduct of its members, employees, volunteers and/or personnel. . . ." (Doc. 179, at ¶¶ 154, 159). Although Plaintiff's Amended Complaint focuses on an alleged duty of care owed to her as a "duty of care to protect children from harm that is owed them by adults supervising children in their care" (*id*. at ¶ 155), Plaintiff now focuses on the duty owed by a possessor of land to an invitee.

Under Pennsylvania law, a plaintiff must prove the following elements to prevail on a negligence claim: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage. *Pyeritz v. Commonwealth of PA.*, 32 A.3d 687, 692 (Pa. 2011).

Whether a defendant in an action for negligence is under a legal duty to conform to a certain standard of conduct is a question of law. *Perasso v. Caesars Cove Haven, Inc.*, 2012 WL 2121244, at *3 (M.D. Pa. 2012) ("The existence of a duty owed by a defendant is

the threshold question in a negligence action, and this is generally a question of law") (citing *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010)). Although the issue of negligence is one better left to a fact finder, in the absence of a duty, the fact trier has nothing to consider and "[t]he issue of whether an act or a failure to act constitutes negligence may be removed from consideration by a jury and decided as a matter of law when the case is free from doubt and there is no possibility that a reasonable jury could find negligence." *Emerich v. Philadelphia Ctr. for Human Dev., Inc.*, 720 A.2d 1032, 1044 (Pa. 1998) ("While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury.").

Under common law in Pennsylvania, there is generally no duty to control the conduct of a third party to protect another from harm, *Emerich*, 720 A.2d at 1036, and a party cannot be held liable for the criminal actions of a third party absent assuming a duty through some act of its own, *Midgette v. Wal-Mart Stores, Inc.*, 317 F.Supp.2d 550, 557-558 (E.D. Pa. 2004). However, a limited exception exists where a defendant either has a special relationship with the third person "which imposes a duty upon the actor to control the third person's conduct" or has a special relationship with the intended victim which gives rise to a right to protection for the victim. Restatement (Second) of Torts § 315 (1965).

Under Restatement (Second) of Torts § 314A, four special relationships exist which give rise to an affirmative duty to aid or protect. Here, the parties agree that only the third relationship is applicable. (Doc. 167, at 8; Doc. 171, at 12-13). Specifically, "a possessor of

land who holds it open to the public is under [a duty to take reasonable action] to [protect and care for] members of the public who enter in response to his invitation." Restatement (Second) of Torts § 314A(3) (1965).

"Pennsylvania law has long held that the duty a land possessor owes to a person who enters his land is to be determined based on whether the entrant is a trespasser, an invitee, or a licensee." *Perasso,* 2012 WL 2121244, at *3 (internal citations omitted). Plaintiff contends that she was a business invitee (Doc. 171, at 14), which OFHE seemingly accepts for purposes of argument without waiving an argument that Plaintiff may actually be a licensee "during much of the relevant time." (Doc. 174, at 9). A business invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Estate of Swift v. Northeastern Hosp. of Philadelphia,* 690 A.2d 719, 722 (Pa. Super. Ct. 1997). It is well-settled that a business invitee is "entitled to the highest duty of care." *Id.* As such, a land possessor is "subject to liability for the accidental, negligent, or intentionally harmful acts of third persons. . . ." *Feld v. Merriam,* 485 A.2d 742, 745 (Pa. 1984). However, to impose liability on the possessor of land, the possessor must fail to exercise reasonable care to "(a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965). Nonetheless,

> this duty does not arise until the landowner "knows or has reason to [know]
> that the acts of the third person are occurring, or are about to occur or unless

> he may know, or have reason to know, from past experience that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor. . . ."

*Midgette*, 317 F.Supp.2d at 562 (quoting *Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968))(internal brackets omitted).  A landowner must therefore have actual or constructive knowledge of prior acts committed by third persons within the premises which may cause injuries to the invitee.  *Moran,* 246 A.2d at 878-879.  "An act cannot be negligent unless the harm is foreseeable to the class to which the complaining party belongs."  *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 41 (Pa. Super. Ct. 2000).  Section 344 of the Restatement of Torts further renders it "merely necessary . . . that reasonable measures be taken to control the conduct of third persons, or to give adequate warning to enable patrons to avoid possible harm. It then becomes a question of fact for the jury as to whether or not the [possessor of land] fulfilled (its) responsibility under the law."  *Moran,* 246 A.2d at 879.  *See also, Bloom v. Dubois Regional Med. Ctr.*, 597 A.2d 671, 679-680 (Pa. Super. Ct. 1991) ("[T]he determination of whether an act or failure to act constitutes negligence, of any degree, in view of all the evidence has always been particularly committed to determination by a jury.  It is an issue that may be removed from consideration by a jury and decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find negligence.") (internal citations omitted).

Several issues of material fact exist such that Defendant's motion for summary judgment on Plaintiff's negligence claim must fail.

Initially, Defendant does not offer any evidence of who constitutes a decision-maker for "Old Forge Hose & Engine Company" since an entity itself obviously cannot have knowledge of events or take the necessary action to prevent harm from occurring. It is undisputed that OFHE is a private, Pennsylvania non-profit corporation (see Am. Compl., Doc. 125, at ¶ 12; OFHE Answer, Doc. 122, at ¶ 12; Am. Compl., Doc. 179, at ¶ 12) and that OFHE is one of three volunteer fire companies serving the Borough of Old Forge and is attached to the Borough building. ((Doc. 166, at ¶¶ 1, 4). A review of the record evidence also reveals that OFHE is a member of the Old Forge Fire Department. (Old Forge Hose & Engine Company By-Laws, Doc. 167-12, at Art. IV, § 1). The Old Forge Fire Department is "under the supervision of the Chief" (Old Forge Fire Department Standard Operating Procedures, Doc. 167-2, at Art. II, § A) who is appointed by the Borough Council (Borough of Old Forge, Ordinance No. 8 (1992), Doc. 167-2, at § 1(D)). Further, although "[e]ach station (Company) shall devise a Standard Operating Procedure (S.O.P) for its own Company operations[; t]his shall not conflict with the [Old Forge Fire Department] S.O.P. Copies of the Company S.O.P. shall be submitted to the Chief and any changes resubmitted to the Chief." (Old Forge Fire Department Standard Operating Procedures, Doc. 167-2, at Art. II, § B).

21

According to Burdyn, she considered Semenza to be "in charge of the ladder company" but that Aulisio was in charge "of the whole department." (Dep. of Burdyn, at 242).

The deposition testimony of Robert Aulisio, the Chief of the Old Forge Fire Department from 1993 through 2009, and Captain of OFHE prior to becoming Chief (Doc. 166, at ¶ 2), did little to illuminate who was or were the necessary individual(s) to be put on notice of prior acts committed by third persons within the premises which may cause injuries to the invitee and who could be held responsible on behalf of OFHE for failing to exercise the reasonable standard of care. During his deposition, the following exchange took place:

> **Q**. Would someone ultimately be in charge through your years at Hose and Engine of Hose and Engine? Would that default to the captain or would that default to the president?
>
> **A**. That was more or less a combined. I mean the captain of the department would be the one pretty much looking out what's going on with the department; whatever the company needs, different things like that, you know, as far as the membership. During a meeting, of course, the president, they would have to bring it up and the president, you know, they would vote on it as a body. But I mean when you look at it, the administrative, the president was there overseeing everything. But the captain really is the one that kind of kept the company on path; where was it going, what were the company needs. You know, so they, the captain, really had a lot of influence on the company, overall.
>
> **Q**. So, would it be safe to say the president would be involved in sort of the day-to-day needs and functioning of Hose and Engine whereas the captain was overall in charge?
>
> **A**. The captain was overall in charge of the company itself and its day-to-day function. I mean when you looked through it, the president – now not all, but

22

some presidents are more on the administrative side. They might not even be into the firefighting element, okay. They'll be aware of it, but they may not be.

**Q**. Right.

**A**. In Hose and Engine that's how it was. I mean the president of the company was a firefighter, but did more of the administrative stuff, didn't really get involved in too much of the firefighting at times.

**Q**. Would the captain be the person responsible for implementing policies and procedures for Hose and Engine?

**A**. Yes.

**Q**. Those policies and procedures I assume would be voted on by the other members?

**A**. Yes.

(Dep. of Aulisio, at 21-22). Aulisio's testimony demonstrates that the role of the Captain and the President are seemingly blurred, and each person's role in the functioning of OFHE is to some extent unclear on the record. This is further confused by the fact that the actual role of the fire chief in overseeing OFHE is not explained. Additionally, the fact that the captain is the person responsible for *implementing*, as opposed to creating, policies and procedures is not particularly instructive in light of the seemingly undisputed fact that there was a complete lack of policies and procedures in place regarding junior firefighters and minors on OFHE property. (*See* Discovery Supplementation by Old Forge Hose and Engine Company, Doc. 170-11, at 2, 4)("There were never any written materials in the form of policies, procedures, rules, or regulations related to the junior firefighter program, with the

exception of the references to the program in the 1991 by-laws[12] . . . ."; "There are no and have never been any written policies, procedures, rules, or regulations regarding the physical presence of minors within the Station and/or their interaction with adult members of the Company.")).

To the extent that there is an argument that the fire chief, such as Aulisio, can be considered a final decision maker or person who could properly be put on notice, Aulisio's interview with the Pennsylvania State Police wherein he "related that he did not have any 'first hand' knowledge of inappropriate behavior between Semenza and Burdyn" but offered that Semenza paid a lot of attention to Burdyn and that Semenza was "always with her" and that Semenza and Burdyn would "go places" (*see* Pennsylvania State Police, Interview with Robert Aulisio, Doc. 202-20, at 2) creates an issue of fact as to whether Semenza's inappropriate relationship was foreseeable to Aulisio.

As a result, an issue of fact remains as to who, representing OFHE, was responsible for creating the reasonable measures be taken to control the conduct of third persons and overseeing their implementation and enforcement as well as whether this person or persons

---

[12] The only discussion of junior firefighters in the Old Forge Hose & Engine Company By-Laws reads as follows:

> Junior firefighters must be 14 years of age. They must be sponsored by an active regular member and complete an application to be reviewed by the membership before acceptance into the company. Junior firefighters must attend all functions as assigned by the company officers. Junior firefighters cannot vote and all junior members are subject to the rules of the Old Forge Hose & Engine Company. Junior Members can be dismissed by the membership for violating any rules or regulations.

(Old Forge Hose & Engine Company By-Laws, Doc. 167-12, at Art. V, § 4).

had actual or constructive knowledge of prior acts committed by Semenza, Krenitsky, or other third person within the OFHE which may cause injuries to an invitee.

Next, a dispute of material fact exists with respect to both whether the duty owed to Plaintiff as a business invitee was breached, and if so, whether that breach was causally connected to Plaintiff's injuries. It will be for a jury to consider whether the "possessor of land", i.e. OFHE, through a person or persons yet to be identified by the parties in this case, failed to exercise reasonable care to "discover that such acts are being done or are likely to be done." Restatement (Second) of Torts § 344 (1965). The admitted lack of any procedure, rule, or policy by the OFHE related to the junior firefighter program, the presence of minors on OFHE premises, or the interaction between adult members of OFHE and the minors, creates a serious question of fact as to whether OFHE fulfilled a responsibility owed to Burdyn to safeguard her against the criminal acts of Semenza and Krenitsky, see Moran, 246 A.2d at 879, as well as whether the lack of these polices, rules, or procedures was the cause of Plaintiff's injuries.

Thus, OFHE's motion for summary judgment on Plaintiff's negligence claim (Count VIII) will be denied.

## C. Negligent Supervision (Count IX)

Count IX of Plaintiff's Amended Complaint alleges that OFHE "had a duty to provide reasonable supervision of its employees, volunteers, agents, members and/or personnel,

namely Defendants Semenza and Krenitsky, when they interacted with child members of the Old Forge Hose & Engine Junior Firefighter Program." (Doc. 179, at ¶ 163).

With respect to Krenitsky and Chiavacci, the Court's prior findings that Krenitsky was not a volunteer member of OFHE at the relevant time and that Chiavacci's actions, outside the firehouse and unrelated to OFHE, precludes OFHE from being held liable for negligent supervision for either of these Defendants' actions.[13] Therefore, Burdyn's negligent supervision claim is premised only on the alleged conduct of Semenza.

An employer has a duty to exercise reasonable care in selecting, supervising and controlling its employees. *R.A.*, 748 A.2d at 697. When an employee is acting outside the scope of his employment, the employer is under an affirmative duty to exercise reasonable care in controlling the employee so as to "prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them" – a duty which arises if:

> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and

---

[13] Plaintiff's negligence supervision claim with respect to Chiavacci's actions is particularly unfounded in light of the commentary in Section 317 of Restatement (Second) of Torts that "[the employer] is not required . . . to exercise any control over the actions of his employees while on the public streets . . . even though the fact that they are his servants may give him the power to control their actions by threatening to dismiss them from his employment if they persist." Restatement (Second) of Torts § 317, cmt. a.

(ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317.[14]  Thus, "[a]s the [Pennsylvania] Supreme Court has opined, '[t]o fasten liability on an employer under Section 317, it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee.'" *R.A.*, 748 A.2d at 697 (quoting *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (1968)).  This state law tort therefore holds an employer liable "where the employer fails to exercise ordinary care to prevent an intentional harm to a third-party which 1) is committed on the employer's premises by an employee acting outside the scope of his employment and 2) is reasonably foreseeable." *Mullen v. Topper's Salon and Health Spa, Inc.*, 99 F.Supp.2d 553, 556 (E.D. Pa. 2000) (quoting *Gorwara v. AEL Indus., Inc.*, 1990 WL 44702, at *5 (E.D. Pa. 1990)).

In the present case, it cannot be disputed that a number of the most serious alleged sexual actions between Semenza and Burdyn occurred in the firehouse.  Although Burdyn admitted that, unlike with Krenitsky, she never met Semenza in the OFHE bunkroom (Dep. of Burdyn, at 251), she testified to multiple incidents in other parts of the firehouse which

---

[14] Plaintiff relies on Section 317 of the Restatement (Second) of Torts in support of her position that OFHE can be held liable for negligent supervision.  (Doc. 171, at 15).  However, to support this claim, Plaintiff necessarily admits that the individual defendants were not acting within the scope of their employment, a position in direct contradiction to her prior argument that these defendants were acting within the scope of their employment for purposes of establishing vicarious liability.  (*See* Restatement (Second) of Torts § 317, cmt. a ("The rule stated in this Section is applicable only when the servant is acting outside the scope of his employment. If the servant is acting within the scope of his employment, the master may be vicariously liable under the principles of the law of Agency.")).

included kissing and inappropriate touching. (See e.g., Trial Tr., Oct. 16, 2013, at 73-75,[15]

108-109,[16] 117-118[17]).  Burdyn also testified during her deposition that Semenza would

---

[15] At Semenza's trial, Burdyn testified as follows:

Q. Let's talk about what you [ ] remember happening when the two of you were alone in the firehouse. Where would you spend time alone together there?

A. Initially we would spend time in, like, the main room then it would progress that we had – we would hang out we would meet each other in the kitchen. We also would spend time in the living area, which is considered the main room as well where the couches are and TV.

Q. Did anything significant happen between the two of you at the firehouse?

A. Yes.

Q. And what would be that?

A. Initially in the kitchen of the firehouse, like I said, its lead in through that red door, in the kitchen was the first place that Mr. Semenza had kissed me. He held me. He caressed my face, touched my body, made out with me. And this happened multiple occasions and we had set up to meet there. . . . He had -- we were leaning against the fridge one time, against the countertop. He had come up behind me and touch me before.

Q. Now, when you are talking about these different things that would happen, are we still talking about that first kiss? Did all of those things happen on one occasion or are you referring to multiple?

A. Multiple.

. . . .

Q. Do you remember exactly how that kiss came about?

A. We met each other in the kitchen. We were very close. I don't remember if there was any conversation, put his arms around [ ] me and I was okay with that, and I put my arms around him. He had touched me and leaned into me and we [were] leaning against the fridge.

(Trial Tr., Oct. 16, 2013, at 73-75).


[16] At Semenza's trial, Burdyn testified as follows:

Q. Did [Semenza] ever touch you anywhere on your body?

A. Yes.

Q. Did that happen on one occasion or more than one occasion?

A. Multiple.

Q. Did you remember the very first time that anything happened with the defendant beyond kissing?

A. In the winter, early -- in early of the year of 2005 an incident occurred on the couch in the firehouse. We were watching TV, I had blanket over my lap. He proceeded to touch my leg and he went up my leg and touched me over my underwear and then proceeded to go underneath my underwear and touched me in the same fashion.

Q. What part of his body is he touching you with?

A. His hand.

come into the bathroom in the firehouse and watch her shower. (Dep. of Burdyn, at 282; see also, Trial Tr., Oct. 16, 2013, at 85). Semenza further made "crude comments" in front of members of the OFHE, such as "talking about [Burdyn's] body" and her chest. (Dep. of Burdyn, at 265-266).

In addition, this Court found, *supra*, that Semenza was not acting within the scope of his employment when he engaged in sexual acts with Plaintiff.

Therefore, the first element to establish a negligent supervision claim, namely that the intentional harm was committed on the employer's premises by an employee acting outside the scope of his employment, has been met. At issue is only whether Semenza's actions were reasonably foreseeable to the employer.

---

Q. And you said that he touched outside your underwear and inside of your underwear?
A. Yes.
. . . .
Q. And what happened once his hand went inside of your underwear?
A. He proceeded to touch me and he inserted his fingers inside of me.
. . . .
Q. Do you know how old you were when this happened?
A. I was 15.
(*Id.* at 108-109).

17 At Semenza's trial, Burdyn testified as follows:
Q. Did [Semenza] ever ask you to touch him anywhere on his body?
A. Yes.
Q. Would you be able to explain that?
A. We were in the kitchen [of the firehouse] and he had unzipped his pants and I -- he had exposed himself to me and I had touched him and that was all that had happened there.
Q. And what part of his body were we referring?
A. His penis.
Q. Did you see that part of his body?
A. Yes, I did.
(*Id.* at 117-118).

Defendant's motion for summary judgment on this count fails for similar reasons as those previously addressed by this Court. First, it is unclear from the record who constituted the "employer" for purposes of imposing liability, and therefore the Court cannot determine whether or not that person or persons was on notice. A trier of fact will also be tasked with the job of determining whether, due to a lack of any policies, rules, or regulations governing minors and the junior firefighter program, as well as the allegations that a number of firefighters and police officers heard Semenza make "crude" comments to Plaintiff, asked her about her relationship with Semenza,[18] and saw arguably inappropriate behavior between Semenza and Burdyn,[19] there was a foreseeable risk of harm to the plaintiff and whether the employer knew or should have known of the necessity and opportunity for exercising his or her control over Semenza.

Summary judgement will accordingly be denied as to Count IX of Plaintiff's Amended Complaint.

### D. Premises Liability (Count X)

Count X of Plaintiff's Amended Complaint, entitled Premises Liability, is largely duplicative of Count VIII (Negligence), alleging that OFHE owed Plaintiff a duty "to take

---

[18] For example, according to Burdyn, Mark Tagliaterra, a lieutenant at OFHE and good friends with Burdyn's stepfather (Doc. 166, at ¶ 3) asked her questions about her relationship with Semenza, but she lied to him in response. (Dep. of Burdyn, at 377-378). Burdyn also testified that "several different police officers" inquired about her relationship with Semenza but she lied to them as well. (*Id.* at 377).

[19] For example, Steven Lowe, a police officer for the Old Forge Borough, testified about several incidents in the fire department, including once seeing Semenza and Burdyn sitting "a few inches apart" on the couch in the front room, covered by a blanket, and also seeing Semenza "up on top of [Burdyn] with his arms on the sides standing fairly close, pressed up against her" in the fire department kitchen. (Trial Tr., Oct. 17, 2013, at 288-291).

reasonable precaution against harmful third party conduct on its premises or at events or

trainings sponsored or controlled by" OFHE and that the defendant "breached this duty

when it failed to exercise reasonable care to discover that Defendants Semenza and

Krenitsky were utilizing its premises and/or events and trainings to commit sexual grooming,

skullduggery and abuse against minor children, including Plaintiff." (Doc. 179, at ¶¶ 172,

174).

"Premises liability is a theory of negligence, where the basis of the duty of care is the

possession or control of the premises where injury occurred. . . . The elements are the

same - a plaintiff must prove: (1) duty, (2) breach, (3) causation, and (4) damages." *Devitt*

*v. Marriott Hotel Mgmt. Co. Virgin Islands, Inc.*, 2014 WL 184625, at *4 (D. V.I. 2014).

With respect to the negligence claim, Plaintiff concludes that she was a business

invitee on the premises of OFHE and a special relationship therefore existed between

herself and the defendant. (Doc. 171, at 14).  Plaintiff argues the same point in support of

her premises liability claim. (*See id.* at 17-19).  However, Plaintiff attempts to distinguish the

claims by asserting that "[n]ot only did OFHE owe Plaintiff a duty to protect her from harm

as a result of a special relationship, namely the business invitee relationship, but Plaintiff

also submits that OFHE 'had a hand in creating the harmful condition' that caused Plaintiff's

harm." (*Id.* at 18)(quoting *Moultrey v. Great Atlantic & Pacific Tea Co.*, 422 A.2d 593, 598

(Pa. Super. Ct. 1980).  Unlike the argument set forth in support of the special relationship,

which relied on Restatement (Second) of Torts § 344, Plaintiff's latter argument relies on §

343 which provides that:

> A possessor of land is subject to liability for physical harm caused to his
> invitees by a condition on the land if, but only if, he
>> (a) knows or by the exercise of reasonable care would discover the
>> condition, and should realize that it involves an unreasonable risk of harm
>> to such invitees, and
>> (b) should expect that they will not discover or realize the danger, or will
>> fail to protect themselves against it, and
>> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

Premises liability claims based on § 343 traditionally apply to actual defects on the

property as opposed to intentional acts of a third person. As Defendant properly points out,

the cases cited by Plaintiff in support of her position, including *Moultrey*, "address traditional

premises liability situations, wherein the alleged injury results from some defect in the

subject property which caused a fall or other similar injury, rather than from the intentional

actions of a third party." (Doc. 174, at 9). When presented with cases involving the

intentional acts of a third party wherein a party has argued that both §§ 343 and 344 apply,

Courts have generally limited their analysis to the applicability of § 344. *See e.g., Rabutino*

*v. Freedom State Realty Co., Inc.*, 809 A.2d 933, 938 n.4 (Pa. Super. Ct. 2002) (where an

underage man was shot at a hotel during a large party by another partygoer, the Court

found that "[p]articularly suited to [the mother of the deceased man's] case is Section 344,

which, unlike Section 343 and its general focus on the duties of all possessors to discover

dangerous conditions of their land, expressly addresses the duties of business owners to

32

protect business invitees from the actions and conduct of third persons on the premises. Accordingly, we limit our review to Rabutino's Section 344 cause of action as the most relevant and authoritative expression of law applicable to the facts of the present case."). Furthermore, because a plaintiff bringing a claim under § 344 must meet a higher standard than that required under § 343, specifically that a defendant must have constructive or actual knowledge of a harmful condition as opposed to only having knowledge of the likelihood of a harmful condition caused by a third party, it seems illogical that a plaintiff could bring a claim under both §§ 343 and 344 for the same injuries arising out of the same event or series of events and circumstances.

Given that a review of Plaintiff's Amended Complaint fails to demonstrate any material difference between the negligence claim and the premises liability claim, the Court rejects Plaintiff's attempt to merely re-frame her negligence claim in a different light in order to bring two counts against OFHE as opposed to one.  The Court will therefore consolidate Plaintiff's claims in this Count with those claims in the Count for negligence and dismiss as unnecessary the Count entitled "Premises Liability".  Nonetheless, to the extent that the premises liability claim is premised on § 344, the allegations contained therein will be subsumed in Plaintiff's negligence claim and may proceed to trial for the same reasons as those set forth, *supra*, in this Court's denial of Defendant's motion for summary judgment of Plaintiff's negligence claim.

## E. Punitive Damages (Count XXII)

Finally, Plaintiff brings a claim for punitive damages against OFHE, Semenza,

Krenitsky, and Chiavacci (Count XXII).

In Pennsylvania, punitive damages "are awarded only for outrageous conduct, that

is, for acts done with a bad motive or with a reckless indifference to the interests of others."

*SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 705 (Pa. 1991) (quoting *Chambers v.*

*Montgomery*, 192 A.2d 355, 358 (1963)).

> Punitive damages may be awarded for conduct that is outrageous, because
> of the defendant's evil motive or his reckless indifference to the rights of
> others. Punitive damages must be based on conduct which is "malicious,"
> "wanton," "reckless," "willful," or "oppressive." Further, one must look to the
> act itself together with all the circumstances including the motive of the
> wrongdoers and the relations between the parties. The state of mind of the
> actor is vital. The act, or the failure to act, must be intentional, reckless or
> malicious. (Internal citations omitted).

*Feld*, 485 A.2d at 747-748. As such, punitive damages "are not justified where the

defendant's mental state rises to no more than gross negligence." *SHV Coal*, 587 A.2d at

705. Further, to succeed on a claim for punitive damages, a plaintiff must produce sufficient

evidence to establish that "(1) a defendant had a subjective appreciation of the risk of harm

to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be,

in conscious disregard of that risk." *Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).

OFHE does not directly address Plaintiff's claim for punitive damages, and the Court

declines to grant summary judgment on this Count due to the material disputes of fact

previously identified in this opinion.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant

OFHE's Motion for Summary Judgment (Doc. 165).  A separate Order follows.

Robert D. Mariani
United States District Judge