## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NASTASHA BURDYN** | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:12-CV-2236 |
| | : | (JUDGE MARIANI) |
| **OLD FORGE BOROUGH**, et al. | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Presently before the Court are the following Motions in Limine filed by Plaintiff Nastasha Burdyn:

1. Bar Defendants' Counsel from Asking Scandalous and Impertinent Questions for which there is no Evidentiary Support (Doc. 251);

2. Preclude the Use of Consent as Either a Defense, or a Mitigating Factor, to the Counts Alleged (Doc. 253);

3. Allow Plaintiff to Reference Post-Incident Conduct (Doc. 255);

4. Take Judicial Notice of a 2012 Pennsylvania Uniform Crime Reporting System Statistic (Doc. 261)

5. Plaintiff is Entitled to an Adverse Inference Arising from Old Forge Hose and Engine's Failure to Produce Records that Old Forge Hose and Engine Asserts Went Missing (Doc. 264)

The Court will address each motion in turn. Before doing so, however, the Court notes at the outset that it exercises its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). While motions in limine may serve as a useful pretrial tool that enables a more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *Japanese Elec. Prods.*, 723 F.2d at 260).

"[M]otions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemetech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Specifically, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis original). Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000).

With these principles in mind, the Court now turns to Plaintiff's motions.[1]

---

[1] Plaintiff's Motion in Limine to Preclude Defendants from Denying that Defendants Lawrence A. Semenza, James Krenitsky and Walter Chiavacci Engaged in the Criminal Acts for Which they Pleaded Guilty (Doc. 257) will be addressed in conjunction with Defendant Krenitsky's Motion in Limine to Exclude all Evidence of and Reference to Defendant's Criminal Arrest, Charges, Resulting Suspension and

## 1. Bar Defendants' Counsel from Asking Scandalous and Impertinent Questions for which there is no Evidentiary Support (Doc. 251)

Plaintiff's first motion in limine requests that "Defendants be barred from asking scandalous and impertinent questions of Plaintiff for which there is no evidentiary support." (Doc. 251; Doc. 252, at 7). Plaintiff's motion includes several examples of questions which she deems to be "scandalous and impertinent", including questions which allegedly imply that Plaintiff "decided to have an affair with Krenitsky", that Plaintiff should have told Semenza's wife that she was in love with her husband, that Plaintiff should have been aware of the difference between "good touches and bad touches", and that Plaintiff "felt sexy" when Semenza entered the Old Forge Hose & Engine Company ("OFHE") bathroom while she was showering. (See Doc. 252). The basis for Plaintiff's argument appears to be that these types of questions should be barred because they allegedly were "simply to re-victimize and project blame on Plaintiff." (Doc. 252, at 6). Although Plaintiff provides the aforementioned examples of questions or statements which she deems "scandalous and impertinent", Plaintiff's Reply brief clarifies that these questions were "merely intended to illustrate the types of irrelevant and potentially embarrassing lines of questioning Plaintiff seeks to preclude." (Doc. 338, at 3).

---

Resignation, Guilty Plea, and Nolle Prossed Charges (Doc. 249) and Semenza's Motion in Limine to Exclude all Evidence of and Reference to Defendant's Criminal Arrest, Charges, Resulting Suspension and Resignation, Guilty Plea, Reversal, Acquittals, and Nolle Prossed Charges (Doc. 263), in a separate opinion.
    Plaintiff's motion in limine to Exclude all Evidence Pertaining to Plaintiff's Sexual Behavior and Predisposition, Except as they Relate to the Incidents Involved in this Matter (Doc. 259) will be addressed in conjunction with Defendants' Joint Motion for Admission of Certain Evidence Pursuant to Federal Rule of Evidence 412(b)(2) (Doc. 315) in a separate opinion and following a Rule 412 hearing.

Defendants OFHE and Old Forge Borough filed briefs in opposition to Plaintiff's motion. (Docs. 284, 297). While Defendant Semenza also filed a brief in response to Plaintiff's motion (Doc. 283), the brief fails to address Plaintiff's overarching argument. Rather, Semenza's brief requests that "Plaintiff's request to bar questioning about her actions while showering be extended to barring any and all reference to Defendant [Semenza] allegedly being present in the bathroom as irrelevant." (Doc. 283, at 3). Defendant further argues that "if Plaintiff seeks to introduce evidence that Defendant was present in the bathroom while she showered, Plaintiff's conduct once she thought Defendant Semenza was present is relevant to rebut Plaintiff's claims of assault." (Doc. 283, at 5).

With respect to Plaintiff's motion, the Court has no way of knowing the manner in which defense counsel will ask Plaintiff certain questions or how these questions will be phrased. Nor can the Court at this time determine the relevance of any question defense counsel may pose. The Court will therefore defer ruling on Plaintiff's motion until trial. The Court expects Plaintiff to make any objection to specific questions by Defendants of Plaintiff at the appropriate time, at which time the Court can better determine the propriety and relevance of the question at issue. However, we note that there is no recognized objection simply on the grounds that a question is allegedly "scandalous" or "impertinent". Thus, unless the objection goes to lack of relevance under Rule 401, that, under Rule 403, a danger of unfair prejudice exists should the question be answered, or is premised on

another objection set forth in the Federal Rules of Evidence, the Court will overrule Plaintiff's objection on the grounds that a question is, in Plaintiff's opinion, "scandalous" or "impertinent".

With respect to Semenza's request contained within his brief responding to Plaintiff's motion, the Court first notes that this is an inappropriate manner in which to request a ruling by the Court. The purpose of a brief in opposition to another party's motion is not to make a separate motion, albeit tangentially related to the original party's motion. Nonetheless, the Court will also defer on Semenza's request pending questioning of Plaintiff or any other witness regarding the presence of Semenza in the bathroom at the time Plaintiff was showering. Once again, the Court is not in a position to rule on this request without first hearing testimony by the witnesses and the specific question which Semenza believes elicits inadmissible or irrelevant testimony.

### 2. Preclude the Use of Consent as Either a Defense, or a Mitigating Factor, to the Counts Alleged (Doc. 253)

Plaintiff's next motion in limine (Doc. 253) argues that because Plaintiff was fifteen when the "sexual assaults by Semenza, Krenitsky, and Chiavacci", three adults, occurred, under state law Plaintiff could not consent to having sexual relations with the men and therefore Defendants should be precluded from either using consent as a defense or presenting evidence for the purpose of establishing consent as a mitigating factor. (Doc. 254, at 7).

Plaintiff's motion is overbroad. It is undisputed that Plaintiff was 15 years old at the time that Chiavacci assaulted her and was therefore legally unable to consent. Similarly, until March 30, 2005, Plaintiff was legally incapable of consenting to any alleged sexual acts with Krentisky and Semenza. (See e.g. 18 Pa.C.S.A. § 3125(a)(8); 18 Pa.C.S.A. § 3126(a)(8); 18 Pa.C.S.A. § 3123(a)(7)). No party appears to dispute this statement. However, Plaintiff's motion attempts to preclude the defendants from raising the issue of consent for the entire period during which the sexual interactions allegedly occurred, i.e. through 2007. Plaintiff argues that by "criminalizing sexual activity with minors who are less than sixteen (16) years old, and explicitly precluding consent as a defense to such acts, the Pennsylvania General Assembly sought to protect adolescents from the physical and psychological harms that often result from having sexual relations with adults." (Doc. 254, at 3). Although Plaintiff sets forth what may be characterized as a public policy argument for why any evidence of consent during the entire time period of her claims should be precluded, she fails to provide any legal basis for a claim that she was incapable of consenting to the alleged actions of Semenza and Krenitsky as of March 30, 2005 or thereafter or any legal argument as to why evidence of her consent as of that day would be inadmissible.

However, the Court will defer ruling on Plaintiff's motion. To the extent the evidence offered to establish that the actions which Plaintiff contends constitute sexual behavior, assault, and/or battery, shows that the actions occurred before she reached the age of 16,

an appropriate objection should be made and may be granted. Conversely, if the evidence which Plaintiff contends demonstrates the occurrence of purported violations to her bodily integrity, assault, and/or battery, shows that these actions occurred after she reached the age of 16, an objection will be deemed without merit. The Court needs to have before it the specific question which Plaintiff finds objectionable. The Court's ruling will then turn on whether the party posing the question to which Plaintiff objects can lay a foundation establishing that Plaintiff, at that time to which the question is directed, was at least 16 years of age.

### 3. Allow Plaintiff to Reference Post-Incident Conduct (Doc. 255)

Plaintiff's next motion (Doc. 255) seeks to introduce and reference three lawsuits filed against the Borough of Old Forge and/or Semenza and Krenitsky "stemming from acts that occurred in 2006, which is within the relevant time frame of Plaintiff's Complaint. (Doc. 256). Plaintiff asserts that these lawsuits will be used to "illustrate Mayor Michele Avvisato's absenteeism from the Borough." (*Id.* at 2). In support of her motion, Plaintiff attached as Exhibits the following: the Complaint filed by Michael Marino in *Marino v. Old Forge Borough, et al.*, 3:07-cv-495 in federal court and a letter from Attorney Cynthia Pollick advising the Court that the matter had been resolved (Ex. A, B); a portion of the videotaped deposition of Michelle Avvisato taken for purposes of the present action (Ex. C); the Complaint filed by Michelle Venturi in *Venturi v. Semenza*, 07-cv-1252, in the Court of Common Pleas of Lackawanna County and a Praecipe to Discontinue with Prejudice the

matter (Ex. D, E); and the Complaint filed by Michelle Venturi in *Venturi v. Krenitsky, et al.*, 3:08-cv-236, in federal court and a Praecipe to Discontinue with Prejudice the matter (Ex. F, G).

It is unclear precisely how Plaintiff wants to use the lawsuits in the present action and the Court is unable to determine in what manner she seeks to "introduce" or "reference" the lawsuits. Further, the Court is unable to ascertain what exactly is meant by "introduction of lawsuits" in as much as absent a verdict and judgment in any such suit, serious questions of admissibility arise with respect to what portions or aspects of the suit or its prosecution are admissible. The Court notes that a complaint is nothing more than an allegation. Solely on the basis of the allegations of a complaint, the Court is not prepared to say a complaint, its disposition, or any of the testimony introduced or documents presented in that litigation, present evidence that would be relevant to this case under Rule 401, permissible under 403, and not otherwise objectionable under any other applicable Federal Rule of Evidence.

To the extent that Plaintiff intends to produce as witnesses in this case the Plaintiffs in the lawsuits which Plaintiff submitted with her motion, Plaintiff has not provided enough information as to their specific testimony that she intends to elicit so as to allow this Court to engage in the necessary assessment of its probative value with respect to the issues in this case, as well as whether the testimony's introduction would run afoul of Federal Rule of Evidence 403.

The Court will therefore defer ruling on Plaintiff's motion.

### 4. Take Judicial Notice of a 2012 Pennsylvania Uniform Crime Reporting System Statistic (Doc. 261)

Plaintiff's motion in limine requests that the Court "issue an Order taking Judicial Notice of a Pennsylvania Uniform Crime Reporting System statistic that reflects that in 2012 there were Four Thousand Two Hundred Eighty Four (4,282) [*sic*] reported sex offenses against children under the age of Eighteen (18) in the Commonwealth of Pennsylvania." (Doc. 261).

A Court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "The test whether a 'fact' is of the type that is properly the subject of judicial notice under Rule 201 is really one of relevance, whether a reasonable trier of fact might find that the fact being judicially noticed tends to make the existence of any material fact more or less probable." 2 Moore's Federal Rules Pamphlet § 201.5 (Bender). Under the Federal Rules of Evidence, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401.

Preliminarily, the Court cannot take judicial notice of Plaintiff's statement that the 2012 Pennsylvania Uniform Crime Reporting System statistic reflects "there were Four Thousand Two Hundred Eighty Four (4,284) reported sex offenses against individuals under

9

the age of eighteen (18) in the Commonwealth of Pennsylvania in 2012" (Doc. 262, at 5), because the Pennsylvania Uniform Crime Reporting System document, attached by Plaintiff as Exhibit A to her brief in support of the motion, does not reflect this number to be correct. Rather, the document states that there were 4,284 reported sex offenses against *females* under the age of 18 in 2012. There were an additional 1,444 reported sex offenses against males under the age of 18. Thus, the Court cannot grant Plaintiff's request that it take judicial notice of 4,284 sexual offenses against children reported in 2012 because it is an incorrect statement, directly contradicted by the exhibit provided by Plaintiff.

Even if Plaintiff were to be asking the Court to take judicial notice of either (1) a Pennsylvania Uniform Crime Reporting System statistic that reflects that in 2012 there were 4,284 reported sex offenses against *females* under the age of 18 in the Commonwealth of Pennsylvania; or (2) a Pennsylvania Uniform Crime Reporting System statistic that reflects that in 2012 there were 5,728 reported sex offenses against females and males under the age of 18 in the Commonwealth of Pennsylvania, several problems prevent the Court from taking judicial notice of the statistic.

First, Plaintiff fails to explain how the statistic set forth in the 2012 Report offers relevant information that may aid the jury in determining whether any of the defendants violated Plaintiff's rights under federal or state law. The mere fact that Plaintiff was included in the 2012 Report does not tend to make any fact more or less probable than it would be without the evidence, nor does it lend any support to her claims against any of the

defendants. The statistic which Plaintiff wishes this Court to take judicial notice of is simply the number of *reported* sexual offenses. It does not even purport to state how many of the sexual offenses actually occurred. The statistic, by itself, does not tell the jury anything relevant or probative.

Furthermore, as OFHE properly points out, the category of "sexual offense" includes the following:

> Offenses against chastity, common decency, morals and the like
> Adultery and fornication
> Buggery
> Incest
> Indecent liberties
> Indecent exposure
> Sodomy
> Seduction
> Statutory rape - (no force)
> All attempts to commit any of the above.

*See* Pa. Uniform Crime Reporting System, Annual Report (2012), Introduction, at 7. "Sexual offense" does not include "forcible rape, prostitution and commercialized vice." *Id*. The category which Plaintiff is attempting to have introduced at trial encompasses far more than the type of actions that she reported were taken against her. This further raises the issue of the statistic's relevance and raises an issue of confusing or misleading the jury about the purpose and meaning of the reported number.

Although it is undisputed that Plaintiff reported the incidents against the individual defendants in 2012, the actual alleged sexual conduct took place between 2004 and 2007. Therefore, it appears Plaintiff's attempted use of the 2012 statistic is based solely on the

11

fact that it was in that year that she reported the incident. However, the statistic clearly conflates the number of individuals who may have been victims in 2012 and immediately reported it with those who may have been victimized several years before and did not report it until later. The 2012 statistic does not shed any light on the actual number of individuals who were victims of sexual offenses in 2012, nor does it demonstrate the number of individuals under 18 who were the victims of sexual offenses in the same year or years that Plaintiff was allegedly victimized.

The number of individuals under the age of 18 who reported a "sexual offense" has no bearing on whether the incidents that Plaintiff claims took place actually occurred or whether the Borough or OFHE should be held liable in some way. Rather, and in light of the broad definition of "sexual offense", given the information presently before the Court, the statistic appears to be both irrelevant and to the extent it has any relevance, it would be substantially outweighed by a danger of unfair prejudice to the defendants and of confusing and misleading the jury. The Court will therefore deny with prejudice Plaintiff's motion.

### 5. Plaintiff is Entitled to an Adverse Inference Arising from Old Forge Hose and Engine's Failure to Produce Records that Old Forge Hose and Engine Asserts Went Missing (Doc. 264)

Plaintiff's next motion in limine asserts that she is entitled to an adverse inference arising from OFHE's failure to produce records that OFHE asserts went missing (Doc. 264). Plaintiff's motion and accompanying brief fail to specify the contents of the documents or records that she asserts are missing and entitle her to an adverse inference. Nor does

Plaintiff explain the relevance of the documents or how they would, or could, support her state law claims against the OFHE.

Notably, however, a review of the exhibits attached to Plaintiff's brief, including the Objections and Answers of OFHE to Plaintiff's Interrogatories and Request for Production of Documents (Doc. 266, Ex. F) as well as the "Discovery Supplementation" by OFHE (Doc. 266, Ex. K) shed some light on what documents are at issue.

The issue of missing documents here arises from certain interrogatories and production of document requests by Plaintiff directed at the OFHE. Addressing certain inadequate responses provided by the OFHE, the Court directed that the requests and interrogatories at issue be supplemented (see Doc. 76). Accordingly, the OFHE provided Plaintiff with a "Discovery Supplementation" (Doc. 266, Ex. K). In the supplementation, prior to addressing the specific requests that the Court had deemed insufficient, counsel for the OFHE explained why certain information and documents were not, and could not, be produced. OFHE's counsel explained that:

> As an initial matter, the records of the Company were stored in two filing cabinets through the early to mid-1990's. Ron Coles and Larry Enderline recall this, but they left active membership with the Company and did not return until January 2010 and September 2008, respectively. At some point in time, after Coles and Enderline had left their active membership, those file cabinets were removed to the basement, where they were placed and joined three other filing cabinets containing information for separate fire companies, not the Old Forge Hose & Engine Company, for a total of five filing cabinets.
>
> Sometime in the spring, 2012, Semenza notified Ron Coles and Larry Enderline, who had by then returned to active membership (and officer status) in the Company regarding a file theft of the contents of the filing cabinets of

13

> the Old Forge Hose & Engine Company. The State Police investigated this occurrence, but they came to the conclusion that they could not press charges explaining to Enderline and Coles that there was insufficient information to do so. At the time that the State Police investigated the file contents theft, they were also looking into allegations of financial impropriety involving the Company and Mr. Semenza. No charges were brought about those concerns, either.
>
> The two filing cabinets contained all the essential information regarding the Company, to include financial information, meeting minutes, and information related to firefighters and their respective personnel files.
>
> As part of the State Police investigation, certain financial information was re-created through access to the Company's financial bank, in the form of bank account records. That information was retained by the State Police as part of their investigation, and it was not returned to the Company.
>
> The disappearance of the records from the file cabinets occurred sometime after 2008, when they were last known to have existed through the observations of Larry Enderline who was working in the basement and noted the general existence of the cabinets. It should be noted that the present officers of the Company did not know that there had been unauthorized access to the station available to non-members, and they changed the locks when they learned of that following the file theft. The cabinets themselves were not locked and the basement area where they were located was not locked.

(Doc. 266, Ex. K, at 1-2).

Following the above quoted statement, the OFHE addressed each document request that needed supplementation. A review of this Discovery Supplementation reveals that the documents which purportedly disappeared may have consisted of the following:

- "[E]ssential information regarding the Company, to include financial information, meeting minutes, and information related to firefighters and their respective personnel files."

- Semenza and Chiavacci's applications, training information, certificates, and any certification updates.

- Plaintiff's member file, including her membership application, training certifications, and work papers.

- Documents reflecting information and expenditures relating to the OFHE's purchase of fire equipment, supplies, gifts and/or travel.

(*Id.* at 2-4).

The general principles regarding inferences to be drawn from the loss or destruction of one or more documents are well-established in the Third Circuit. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Id.* Spoliation therefore occurs where: "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). The party asserting that spoliation has occurred has the burden of establishing these elements. *See Sarmiento v. Montclair State Univ.*, 513 F.Supp.2d 72, 94 (D.N.J. 2007), *aff'd*, 285 F.App'x 905 (3d Cir. 2008); *Gentex Corp. v. Sutter*, 827 F.Supp.2d 384, 390 (M.D. Pa. 2011).

Here, OFHE does not dispute that "up until the time the records in question went missing, they were in OFHE's possession." (Doc. 293, at 7). However, OFHE asserts that Plaintiff cannot show that the other three elements have been established. (*Id.*).

Although Plaintiff properly enumerated the factors that must be shown to establish spoliation (*see* Doc. 266, at 6), she fails to apply any of the facts of this case to the factors or explain how these elements have been met. With respect to how the missing evidence is relevant to her claims or defenses in this case, Plaintiff presents no argument and thus the Court is at a complete loss to determine even the possible relevance of the documents. It is clear that Plaintiff has not shown any nexus between the missing documents and their relevance to this action, and specifically any of the remaining claims. Therefore, Plaintiff has not carried her burden of establishing the second necessary element to demonstrate spoliation.

With respect to the third element of spoliation, when determining whether there has been actual suppression or withholding of evidence:

> No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. *See generally* 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d *Evidence* § 177 ("Such a presumption or inference arises, however, only when the spoilation [*sic*] or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").

*Brewer*, 72 F.3d at 334. A finding of bad faith is therefore "pivotal" when determining whether spoliation occurred. *Bull*, 665 F.3d at 79.

16

Although Plaintiff contends that the deposition testimony in this matter "confirms that the . . . records in question went missing in or around the time the criminal investigation in this matter occurred" (Doc. 266, at 4), the deposition testimony cited by Plaintiff does not actually support this statement. Rather, the testimony demonstrates that *it was discovered* that the records were missing in or around May, 2012. (*See* Doc. 266, at 4-6). Based on the timing of this discovery, Plaintiff asks this Court to infer that the documents must have been intentionally destroyed and OFHE acted in bad faith in ensuring their disappearance. The Court declines to adopt this highly speculative argument or infer bad faith on the part of OFHE in the absence of any other evidentiary support.

Finally, spoliation requires that there was a duty to preserve the evidence which was reasonably foreseeable to the party. Plaintiff states in a conclusory fashion that the evidence "went missing for no other discernible reason just as the underlying criminal investigation had commenced or, at the very least, at a time when the Defendants clearly knew an investigation was imminent." (Doc. 266, at 8). Again, the deposition testimony cited by Plaintiff does not necessarily lead to the conclusion that the documents disappeared at this time. Further, Plaintiff does not explain what discernible reason OFHE may have had for destroying files containing "financial information, meeting minutes, and information related to firefighters and their respective personnel files" (Doc. 266, Ex. K, at 2) or how this information may have affected litigation against any defendant, and OFHE in particular. Finally, even crediting Plaintiff's assertion that the records went missing

immediately prior to, or even the same week, that a criminal investigation began into the individual defendants, one of whom was not even a volunteer at OFHE, it is far too tenuous a connection to argue that OFHE could have been aware as early as May, 2012, that it had any duty to preserve evidence or to reasonably anticipate litigation.[2]

For the aforementioned reasons, Plaintiff has failed to show the necessary elements to establish spoliation. Therefore, Plaintiff's motion requesting an adverse inference will be denied.[3]

## 6. Conclusion

For the foregoing reasons, Plaintiff's motions in limine (Docs. 251, 253, 255, 261, 264) will be decided as set forth in this Memorandum Opinion. A separate Order follows.

Robert D. Mariani
United States District Judge

---

[2] A party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994). The duty arises whenever "the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518 (D.N.J. 2008) (citing *Joe Hand Promotions v. Sports Page Cafe*, 940 F.Supp. 102, 104 n.13 (D.N.J.1996); *Baliotis*, 870 F.Supp. at 1290).

[3] In addition to opposing Plaintiff's motion, OFHE requests that if the Court grant Plaintiff's motion, the Defendants be provided with an adverse inference against Plaintiff "arising from Plaintiff's failure to produce records, namely intentionally destroyed journals and diaries from the time in question." (Doc. 293, at 2; *id.* at 5-6, 12). Because the Court will deny Plaintiff's motion, and OFHE requests its own adverse inference against Plaintiff *if* the Court grants Plaintiff's motion, the Court will deny OFHE's request without prejudice.